THE CHICAGO, KANSAS & WESTERN RAILROAD COM-
PANY v. WILLIAM MORROW.

WATERCOURSE — *What is.* For a watercourse there must be a channel, a
bed to the stream, and not merely low land or a slough over which
water flows. (*Palmer v. Waddell*, 22 Kas. 352; *Gibbs v. Williams*, 25 id.
214.)

*Error from Woodson District Court.*

ACTION by *Morrow* against the *Railroad Company*, to re-
cover damages for defendant's right-of-way across plaintiff's
land. Trial on March 15, 1887, and verdict for plaintiff for
$750. New trial denied, and judgment on the verdict for
plaintiff. The company brings the case to this court.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plain-
tiff in error.

*G. R. Stephenson,* and *W. H. Slavens,* for defendant in
error.

The opinion of the court was delivered by

HORTON, C. J.: It is first insisted that this case was pre-
maturely tried. This claim, however, is decided adversely in
*Railroad Company v. Wilkinson,* just disposed of. The facts
in that case upon this point are the same as those in this.

Again, it is insisted that the court should have given the in-
struction prayed for by the railroad company, "that an inde-
pendent action for damage to the land in question, or crops,
would lie against the company by reason of its damming or
obstructing a natural watercourse." In support of this, it is
claimed that there was testimony tending to show that the
embankment of the railroad prevented the water from flow-
ing in a natural watercourse, as such a course is defined in
*Palmer v. Waddell,* 22 Kas. 352. The testimony of the de-
pression or slough on the premises of the land-owner was in
substance as follows. Mr. Turner testified:

"Q. Are you acquainted with the natural drainage of this

land of Morrow's, and the lands northeast of it? A. Yes, sir.

"Q. How are they drained, if you know? A. There is a slough that arises on section 31, north of the road running from here to Neosho Falls, and runs across the public highway through the north half of the northwest quarter of 36, and it runs down within — well, I would say, three or four rods of Morrow's house; and it runs in a southeast direction from his house, through the farm.

"Q. As it is now, how will that naturally be affected? A. There is no apparent drainage at present; that is, the railroad has cut him off from Harter's land, and they have made a cut there, and the cut is considerable deeper at the center, as far up as where this ravine runs, than it is at the creek. I believe that the water, to run over the ditch at all at the opening at the creek, would cover Morrow's land at any ordinary time.

"Q. About what is the volume of water that flows down that natural drainage in an ordinary season? A. That is a slough that in an ordinary shower will carry three to four feet of water. I have often seen it four feet deep of a rain. It is not a stream, or running water, but a slough that drains nearly all of the south half of the southwest quarter of section 31; the head of the ravine runs up pretty well to the northeast corner of section 31.

"Q. How much does it drain altogether? A. The south half of that quarter, and the eighty acres between that and Morrow's land and his own farm."

In relation to the manner in which the water approached the farm:

"Q. I will ask you if there was a draw that drained upon the west side of the place? A. There is a strip of land that runs low, a little south of the northwest corner of his farm, that Mr. Harter has left as a water-way, and he has not plowed it for some time; it is in a bend here, and in ordinary time when the creek overflows, it runs through this gap in a southeast direction, and runs into the south line of Morrow's place, and continues on a line and leaves Morrow's place not far from where the line crosses between him and Harter, and it runs on through Harter's land, and it enters into the other slough about, I would say, a quarter east of this public road running north and south, inside of Harter's premises."

It is very clear from this testimony that the depression or slough lacked the essential features of a watercourse. For a watercourse there must be a channel, a bed to the stream, and not merely low land or a slough over which water flows. (*Palmer v. Waddell*, 22 Kas. 352; *Gibbs v. Williams*, 25 id. 214.)

We think there was not sufficient testimony tending to show that any natural watercourse was obstructed by the embankment of the railroad, and therefore that the action of the court in refusing the instruction asked was not erroneous.

The judgment will be affirmed.

All the Justices concurring.