THE CHICAGO, KANSAS & NEBRASKA RAILWAY COMPANY v. ALOIS STECK.

1. **SURFACE WATER,** *Obstructed by Railway—Liability.* An owner of land who builds an embankment thereon which obstructs the flow of surface water that falls and accumulates upon his neighbor's land, does not become liable for the injury arising therefrom, unless the passageway through which it flows is such as to constitute a watercourse.

2. **EVIDENCE**—*Watercourse.* The evidence examined, and *held* to be insufficient to show the obstruction of a watercourse.

*Error from Wabaunsee District Court.*

ACTION by *Steck* against the *Railway Company* to rec)ver damages. Judgment for plaintiff, October 10, 1889, for $288.50. The defendant comes here. The opinion states the facts.

*M. A. Low,* and *W. F. Evans,* for plaintiff in error.

1. The court erred in finding for the plaintiff below. The undisputed evidence shows that the water, the obstruction of which is complained of, was merely surface water; that the land over which it flowed was bottom land; that the drains that were filled up by the construction of the railway were built by the plaintiff below some years prior to the construction of the railway, and that the only times that water flowed in them were immediately after heavy rains. The evidence clearly shows that the water which was obstructed was nothing more than surface water. This being true, the court should have found in favor of the railway company, as the common-law rule in reference to surface water has long since been established in this state. The railway company was not required, in the construction of its railway, to provide culverts and passageways under its track for surface water. *Gibbs v. Williams,* 25 Kas. 214; *C. K. & W. Rld. Co. Morrow,* 42 id. 339; *Johnson v. C. St. P. M. & O. Rly. Co.,* 80 Wis. 641; *Jones v. W. St. L. & P. Rly. Co.,* 18 Mo. App. 251.

See, also, *A. T. & S. F. Rld. Co. v. Hammer*, 22 Kas. 763; *K. C. & E. Rly. Co. v. Riley*, 33 id. 374.

The case of *O'Connor v. Fond du Lac Rly. Co.*, 52 Wis. 526, is on all fours with the case at bar. In that case, the plaintiff, for the purpose of draining his low lands, had constructed a ditch, through which the surface water that gathered on his lands flowed to the river. In the construction of the railroad, the defendant filled up this ditch, and caused the water to back up and overflow plaintiff's premises. The court held that the defendant was not liable for the damages caused by the overflow, and that it had the absolute right to fill up the ditch without incurring liability.

The plaintiff below had been paid for all damages which the construction of the railway across the strip of land in question caused, as is shown by the release introduced in evidence. The construction of the railroad was lawful, and, having been made in a proper manner, the railway company incurred no liability thereby. *Hannoher v. St. P. M. & M. Rly. Co.*, 37 N. W. Rep. 717–727.

2. The court erred in overruling the objection of the defendant below to the following question:

"Ques. What did you intend, before the water dammed and stood on your wheat field — what did you intend to use this wheat field for? Ans. Wheat."

This question was objected to as being incompetent, irrelevant, and immaterial. The objection was overruled, and the defendant excepted at the time. This evidence was incompetent for all purposes, and should not have been accepted. It made no difference what the intention of the plaintiff was.

*J. T. Keagy*, for defendant in error:

1. We think that the case of *Palmer v. Waddell*, 22 Kas. 352, is applicable to this case; and that, though the channels are not defined at every point between their source and the place of obstruction, yet if, by reason of any peculiar surface features, as, if the channels led into a pond, or over a rocky ledge or stony place, and then resumed a defined channel,

they could not be lawfully obstructed, especially if the channel had resumed itself already where the obstruction is made, notwithstanding the plaintiff in error might on its right-of-way have laid its roadbed south of the resumed channels. See, also, *Union Trust Co. v. Cuppy*, 26 Kas. 754; *U. P. Rly. Co. v. Dyche*, 31 id. 120; *Gibbs v. Williams*, 25 Kas. 214; *A. T. & S. F. Rld. Co. v. Hammer*, 22 id. 763; *K. C. & E. Rld. Co. v. Riley*, 33 id. 374.)

Defendant in error thinks that, he having imposed a burden on the strip, by making the ravines on it a receptacle of waters conducted there by sewers built by him before the conveyance to plaintiff in error of the strip, the strip remained charged with the burden imposed after the conveyance, without regard to reservations in the deed; and hence we think the railroad was not lawfully built when it closed up our sewers, which were easily visible when plaintiff in error built its road. See Boone, Real Prop., § 140; *Lampman v. Mills*, 21 N. Y. 507; *Butterworth v. Crawford*, 46 id. 349; *Suffield v. Brown*, 4 De G. J. and S. 185; *Watts v. Kelson*, Law Rep., 6 Ch. 166.

2. With reference to the second claim of error, let it be remembered that defendant in error had a very meager knowledge and ability to speak the English language; that plaintiff below in his petition had alleged that the waters were held upon his wheat field so as not to be able to use it for sowing fall wheat again, as he had intended. The question asked of witness was simply bunglingly asked. The idea of the intention of plaintiff below prior to the overflow was not aimed at in the question, but the intention aimed at was that which was thwarted by the long continuance of the waters on and remaining over the field, and not the original overflow. The answer, if the question was irrelevant, could do no harm, and plaintiff in error could suffer no substantial injury from the answer.

47—51 KAS.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action by Alois Steck to re-
cover damages from the Chicago, Kansas & Nebraska Rail-
way Company, resulting from the alleged obstruction of a
watercourse, which dammed the waters and overflowed his
cultivated land and destroyed crops of the value of $1,000.
Prior to 1886, Steck was the owner of a tract of bottom land
extending along Mill creek, and in that year he sold a strip
of the same 100 feet wide to the railway company, upon which
to build its railroad, and conveyed the fee-simple title by a
deed of general warranty.   In the receipt for the money paid
for the land, the company was released from "all damages
sustained or to be sustained by me and tenants by reason of
the construction and operation of the railroad of said com-
pany in a lawful manner through said county of Wabaunsee."
During the year 1887, the railroad was built upon the land
purchased, and it is alleged that in the construction an em-
bankment was made, without culverts or other means of
escape for the accumulation of surface water, and that, in
1889, an overflow occurred which occasioned the damages of
which complaint is made.   It appears that Steck's farm is
situated on the south side of Mill creek, and drains toward
that stream.   The railroad runs nearly east and west, and far
enough from Mill creek to avoid the broken land and ravines
which lead into that stream.   South of the railroad track was
smooth bottom land, without any gorges, cuts, or ravines.
Further south was a range of hills, on the side of which were
some ravines and gulches leading to the bottom land below.
There were some underground ditches through the bottom,
which had been constructed for the purpose of drainage, that
terminated under the railroad track.   In case of a heavy fall
of rain, the waters flowed from the hills over the bottom land,
and, on the occasion mentioned, the bottom land was over-
flowed and the crops injured.   On these facts, the court below
found that there was a liability in favor of Steck, and awarded
him judgment in the sum of $288.50.

We think the evidence is insufficient to warrant a recovery. The railway company had obtained an absolute title to the land on which its road was built, and is to be treated as any other owner of the fee.   The deed conveying the title contained no conditions imposing any unusual obligations upon the company to provide drainage for the land remaining and adjoining that which was sold.   Steck can only recover for the infringement of his common-law rights, and if he desired to impose any other liability upon his grantee with respect to the retention or discharge of surface water it should have been included in the contract of transfer.   It is well settled that, as a general rule, the doctrine of the common law with respect to the obstruction and flow of surface water prevails in Kansas.   (*K. C. & E. Rld. Co. v. Riley,* 33 Kas. 374.) Under that doctrine, an adjoining owner may not without liability obstruct the flow of water through a natural watercourse; but to constitute such a watercourse

"There must be a channel, a bed to the stream, and not merely low land, or a depression in the prairie over which water flows.   It matters not what the width or depth may be, a watercourse implies a distinct channel, a way cut and kept open by running water; a passage whose appearance, different from that of the adjacent land, discloses to every eye, on a mere casual glance, the bed of a constant or frequent stream." (*Gibbs v. Williams,* 25 Kas. 214.)

It has also been held that the mere

"Fact that the owner of one tract of land raises an embankment upon it which prevents the surface water falling and running upon the land of an adjoining owner from running off said land, and causes it to accumulate thereon to its damage, gives to the latter no cause of action against the former." (*A. T. & S. F. Rld. Co. v. Hammer,* 22 Kas. 763. See, also, *C. K. & W. Rld. Co. v. Morrow,* 42 Kas. 339; *K. C. & E. Rld. Co. v. Riley,* supra; *O'Connor v. Railway Co.,* 52 Wis., 526; *Johnson v. Railroad Co.,* 80 id. 641; *Jones v. Railway Co.,* 18 Mo. App. 251.)

The testimony of the witnesses produced by Steck clearly shows that, although there were depressions in the bottom

land south of the railroad, there was nothing which approached to a watercourse. It was described as smooth bottom land, without any cuts of any kind in it, over which you might drive with a team or buggy, as upon the main road. No water passed over the land except surface water, following a rain. It appeared that the land had overflowed frequently before the construction of the railroad, from heavy rains which had accumulated and flowed from the hillsides on the south of it. Nothing can be claimed by reason of the ravines or cuts which extend from the hills south to the bottom land. If the obstruction had been over these, they could hardly be treated as watercourses; but they did not extend across the bottom land to the railroad. The same testimony shows that the land upon which the railroad is built is higher than the bottom land south of the right-of-way, showing that the land would overflow to some extent if no railroad was constructed thereon. The land north of the track, as has been stated, drained toward Mill creek; and while there are ravines and gorges on that portion of the land, nothing can be counted on that, as the railroad does not obstruct or prevent the flow of water through the same.

The defendant in error relies upon *Palmer v. Waddell*, 22 Kas. 352, but that case fails to sustain his claim. There the surface water which flowed from a hilly region and accumulated on the low lands passed through a gorge or ravine, and the flow through this gorge was such as to make a defined channel, which possessed the attributes of a natural watercourse. That has always been regarded as a border case, and the court has since refused to extend it. In this case the testimony fails to show any natural watercourse south of the railroad, and which is obstructed by it; and hence, under the authorities cited, no right of recovery was established.

The judgment of the district court will be reversed.

All the Justices concurring.