The Missouri Pacific Railway Company v. John
B. Keys.

1. Water-course — *Diversion by Riparian Owner.* An owner of
land has a right to change the channel and divert the water in a
stream flowing through his land, providing that he returns the
water to the original channel before it reaches the land of the
proprietor below; and when an owner, for the purpose of straighten-
ing a stream, cuts a ditch through his land and over and along the
highway with the acquiescence and common consent of all, and
turns the water of the stream therein, it will be governed by the
same rules in the matter of interference and obstruction as a natu-
ral water-course.

2. Surface-water, *a Common Enemy.* Waters which have
overflowed the banks of a stream during a freshet in consequence
of the insufficiency of the channel to hold and carry them off are
surface-waters, to be treated as a common enemy against which
any landowner affected may protect himself.

3. ———— *Obstructing the Flow of Surface-water.* While a
landowner cannot obstruct a water-course or divert a stream of
water so as to cause injury to another without being responsible
therefor, he has the right to obstruct and hinder the flow of mere
surface-water upon his land from the land of other proprietors;
and he can even obstruct and turn the same back upon the land
of his neighbor without incurring liability for injuries caused by
such obstruction.

*Error from Wilson District Court.*

John B. Keys brought an action to recover damages
resulting from the alleged obstruction of a water-course
by the railway company. The trial was had by the
court without a jury, and the following findings of fact
and conclusions of law were made :

"1. The plaintiff, John B. Keys, is and has been
for more than five years last past the owner and occu-
pant of the southeast quarter and the south half of
the northeast quarter of section No. 31, in township
No. 30, range No. 16, in Wilson county, Kansas, said
premises being excellent farming land.

"2. In the year 1886, a certain railroad corporation, known as the Verdigris Valley, Independence & Western Railway Company, constructed a line of railroad which passes through Wilson county, Kansas, and said railroad was constructed along the west of section 32, in the aforesaid township and range, and close to the east line of aforesaid section 31, but no part of the road-bed was located upon said section 31. Said railroad passed into the hands of the defendant, the Missouri Pacific Railway Company, some time in the year 1886, and has been ever since controlled and operated by said defendant company.

"3. The said railroad, where it passed the plaintiff's premises, runs nearly due north and south down the valley of Fall and Verdigris rivers. There is a public highway also running north and south, which is on the west side of said line of railroad and the east side of the plaintiff's premises. This highway existed prior to the railroad. About two miles west of said railroad, and extending substantially north and south, is a range of high hills which form a continuous and extended ridge. The slopes and summits of these hills are covered with grass, but destitute of timber. In the gorges, however, between the hills, are groves and clumps of trees of native timber. There are three small branches or streams which have their sources in three different gorges among these hills, and flow northeast and east and unite in one stream a little east of the house of a man named Squires, forming a stream known as 'Crow creek.' This stream, from the point of confluence, as above stated, flows substantially in an eastern direction until it reaches plaintiff's premises. It strikes the southeast quarter of section 31 on the western side, about the center, and from there it originally flowed slightly northeast, then turned to the southeast and flowed into Verdigris river.

"4. Some time before the construction of the defendant railroad, the plaintiff, Keys, dug a large ditch for the purpose of straightening the course of the stream where it crossed his premises. He commenced this ditch on the west side of the southeast quarter afore-

said, where the stream struck it, and dug it due east, about 12 feet wide and 3 feet deep, down the center of the quarter-section to the eastern line, until it again connected with the original channel of Crow creek. The original channel of Crow creek, where it first struck plaintiff's premises on the west, and from thence flowed northeast and thence southeast in a circuitous course, is completely filled up, and water no longer flows there, unless it is water backed up from the railroad, as hereafter stated. The railroad grade of defendant's railroad, along the east side of plaintiff's premises, is about three or four feet high, and, in times of heavy rains, it dams up the mouth of plaintiff's ditch where it emerges from his premises, fills it with mud and sediment, and the accumulated water backs up from the railroad grade and overflows nearly all of plaintiff's said premises, and destroys his growing crops.

" 5. Before the construction of the defendant's railroad, in time of high water and when Crow creek overflowed the ditch plaintiff had constructed, it flowed over the public highway east of plaintiff's premises (the same being lower than the land on the west) and through openings under said highway and made its escape into the original channel of said creek, and from thence on into Verdigris river. There are four openings under the track of the defendant railroad, located as hereafter stated, to admit the passage of water flowing from the west. The first opening is about 30 rods north of the south line of plaintiff's premises, and is 6 feet wide and a foot and a half deep. The second opening is opposite the south line of plaintiff's premises, is 10 feet wide and 2 feet deep. The third opening is a few rods south of the second opening, is 6 feet wide and 1 foot and 4 inches deep. The fourth opening is 306 feet south of the third opening, and is 40 feet wide and 4 feet deep. The size and location of these openings are such, taking into consideration the height, length and general conformation of the railroad grade, that said openings are inadequate to carry off the water flowing down

Crow creek in times of heavy rains, and therefore it backs up on plaintiff's premises as before stated.

"6. The slope of the land that is drained by Crow creek is to the northeast and southeast. Said creek affords the natural outlet for the water which falls on at least a section of land. It is fed by springs at different places before reaching the railroad. In the dry season of the year it goes dry in some places; in others the water runs the entire year. The water has always been accustomed to run in the creek so far as the recollection and observation of the witnesses extend (which so far as the facts in this case are concerned reach back to 1868, when the county was first settled). The stream has natural banks; it has cut away through the turf and has a well-defined channel. From the point of confluence of the three small streams on the Squires farm and down the course of the stream in numerous places native forest trees grow along its banks, such as cottonwood, elm, sycamore, etc. At one point about midway between Squires's farm and plaintiff's premises there is an extensive belt of young willow along the banks, the belt being two or three hundred yards long, about three or four rods wide, and the trees being between 15 and 30 feet high. At various places along the stream can be seen bunches of drift, lodged high up on the banks and the adjoining undergrowth, indicating that in times of heavy rains the creek is the natural outlet for a large volume of water. The said stream of Crow creek is a natural water-course.

"7. It was agreed upon the trial of this action that the court might take a personal view of plaintiff's premises, the railroad of defendant at and near said premises, the aforesaid stream of water, and all other matters and things relating to the foregoing which could be seen and might aid the court in deciding the cause. Thereupon, on the afternoon of the 22d day of May, 1890, and during the May term of the Wilson county district court, the court went to the place where the foregoing objects could be seen, and the same were pointed out and identified by the coun-

sel of the respective parties. That being done, the court personally and on foot investigated the sources of Crow creek, and followed said stream from Squires's farm to and across plaintiff's premises, down the railroad, and over and across the railroad, for some distance in a southeasterly direction. The length of the stream from the point of confluence on Squires's farm, to where it reaches the railroad, taking into consideration its windings and sinuosities, is about two or two and one-half miles.

"8. During the year 1888, in consequence of the failure of the defendant company to provide sufficient passage-ways for the waters of Crow creek, as hereinbefore stated, the waters of said creek overflowed plaintiff's premises, and he thereby sustained injury to his crops of wheat and corn as follows :

| | |
|---|---|
| To his wheat | $60 00 |
| To his corn | 69 00 |
| Total for 1888 | $129 00 |

"9. During the year 1889 the plaintiff sustained injuries to his wheat and corn in the manner and by reason of the facts above stated, as follows :

| | |
|---|---|
| To his wheat | $150 00 |
| To his corn | 75 00 |
| Total for 1889 | $225 00 |
| Total loss and damage for said two years | 354 00 |

"10. Some time during the year 1887 the defendant company, through its proper officers, had notice and knowledge that the openings under its road-bed were insufficient and inadequate to afford a sufficient outlet for the waters of said Crow creek.

"11. This action was commenced on the 28th day of December, 1889, and no damages have been allowed the plaintiff for any injury to his crops that occurred more than two years prior to the commencement of this action.

"12. There is no proof that the defendant company entered into a contract with the Verdigris Valley, Independence & Western Railway Company to construct the line of railroad now controlled and operated by the defendant company, and which runs by plaintiff's premises.

14—55 KAS.

"13. Prior to the construction of said railroad, said Verdigris Valley, Independence & Western Railway Company duly obtained the right-of-way for said road through Wilson county, Kansas, by virtue of condemnation proceedings duly and regularly had and in accordance with law. A very small tract of plaintiff's land in the extreme southeast corner of his premises was appropriated by these proceedings, and he was allowed $6 as the value of the land so taken, and 5 cents as damages to land not taken.

"And from the foregoing findings of fact the court deduces the following conclusions of law :

"The plaintiff is entitled to recover of the defendant the sum of $354, his damages as aforesaid sustained, and the costs of the action, for which judgment will be rendered."

A motion for a new trial was made and overruled, and judgment was awarded in favor of *Keys* for the sum of $354. The railway company alleges error, and brings the case here.

*J. H. Richards*, and *C. E. Benton*, for plaintiff in error ; *S. S. Kirkpatrick*, of counsel :

We presume that the claim that this alleged creek (known as Crow creek) is a natural water-course is based upon the decision of this court in the case of *Palmer v. Waddell*, 22 Kas. 352, but we insist that the differences between the facts in the case at bar and the one cited are fatal to this claim. See *Gibbs v. Williams*, 25 Kas. 214. The facts in this case differ very materially from the facts in the case of *Palmer v. Waddell*, and are almost exactly the same as the facts in the case of *C. K. & N. Rly. Co. v. Steck*, 51 Kas. 737. In order to hold that this alleged stream was ever a natural water-course it will be necessary to extend the terms of the decision in the *Waddell Case*, but it is expressly stated by this court, in the case of *K. C. & E.*

*Rld. Co. v. Riley,* 33 Kas. 380, that the *Waddell Case* is an extreme case, and that its terms were never intended to be broadened.

We claim that if the alleged stream ever was a natural water-course its character as such had been destroyed by the plaintiff, and that at the time the railroad was constructed and at the time the injuries complained of occurred, there was nothing upon his land except ditches, which collected all of the surface-water from his premises, and there was nothing on the highway except two ditches which plaintiff himself had dug. We hold that the plaintiff had no right to drain his farm into this public highway, and had no right to dig numerous ditches along the same, and, if he did so, he can have no cause of action if by the improvement of the highway or the construction of other improvements on adjacent lands such water is forced back upon the lands from whence it came. *Preston v. Hull,* 42 N. W. Rep. 305.    See, also, *O'Connor v. Railway Co.,* 52 Wis. 526.

Under the circumstances as shown by the evidence in this case, we believe that the owners of the land east of plaintiff's land would have had the right to throw up an embankment along the west side of their lands for the express purpose of preventing the water which overflowed said ditches, and the surface-water which plaintiff conducted into the highway by means of ditches and tiling, from spreading upon their lands at all. The water which overflowed the ditches was all surface-water, and the owners of the land east of plaintiff's land certainly had the same right to prevent it from flowing upon their land as plaintiff had to cause it to flow there. And the railway company had the same right. *Preston v. Hull,* supra.

The water claimed to have been stopped by the railroad embankment was surface-water. Of course, if this water which overflowed the ditches and which was prevented from spreading out upon the lands east of the road was surface-water, the railway company cannot be held liable for obstructing it, if it did so. The company was not bound to construct a trestle the length of plaintiff's farm to afford an outlet for such water as this. *A. T. & S. F. Rld. Co. v. Hammer*, 22 Kas. 763; *C. K. & N. Rly. Co. v. Steck*, 51 id. 737; *Mo. Pac. Rly. Co. v. Renfro*, 52 id. 237.

It must be admitted that a large portion of the water which found its way into the ditches in the highway was surface-water drained from plaintiff's land; but, regardless of this, we insist that all·the water, from whatever source it originally came, which overflowed the ditches dug by the plaintiff in the highway, and which may have been stopped in its eastward flow by the railroad embankment, was surface-water, for the obstruction of which the company was not liable. *McCormick v. Railroad Co.*, 57 Mo. 437; *Abbott v. K. C. St. J. & C. B. Rld. Co.*, 83 id. 280; *Schneider v. Mo. Pac. Rly. Co.*, 29 Mo. App. 70; *Jones v. W. St. L. & P. Rly. Co.*, 18 id. 251; *Taylor v. Fickas*, 64 Ind. 167.

*Sutherland & Young*, for defendant in error:

There are two principal questions that arise for answer: (1) Was Crow creek a natural water-course? (2) If it was a natural water-course, then did the railroad company, at the point in question, make sufficient and properly-located openings for the escape of its water? There can be no shadow of doubt but that the facts bring this case safely within *Palmer v. Waddell*, 22 Kas. 352, and *Gibbs v. Williams*, 25 id.

214; see, also, *Pyle v. Richards*, 22 N. W. Rep. (Neb.) 370.

No landowner is in court complaining, no one appears for the public road to complain, and the evidence shows that the public highway was in no way the cause of the overflows. These ditches, straightening the creek, were made by the consent of the landowners affected. Even if these ditches had not carried the contents of a natural water-course, we doubt the right of anyone to molest them. Leese helped construct them; Myers had not complained. "A ditch dug by common consent as a neighborhood drain, and permitted to remain open as a water-course for several years, is governed by the same rules as other water-courses." *Freeman v. Weeks*, 7 N.W. Rep. (Mich.) 904; see, also, *Wheatley v. Christman*, 64 Am. Dec. 657 (24 Pa. St. 298); *Norton v. Valentine*, 39 id. 220 (14 Vt. 239); *Blanchard v. Baker*, 23 id. 504 (8 Greenl. 253); *Union Trust Co. v. Cuppy*, 26 Kas. 764.

In *Macomber v. Godfrey*, 11 Am. Rep. 349 (108 Mass. 219), we find the following in point: "In an action for the diversion of a water-course, it appeared that a point on the defendant's land, about five rods from the plaintiff's land, the water ceased to flow between defined banks, but spread out over the surface of the ground and so ran to and across plaintiff's land, then began to flow in a definite channel. *Held*, That the stream did not cease to be a natural water-course, and that plaintiff could maintain the action." That the same law applies to subterranean streams — and we can distinguish no difference in principle — see the following authorities: *Roath v. Driscoll*, 52 Am. Dec. 352 (20 Conn. 533); *Haldeman v. Bruckhart*, 84 id. 511 (45 Pa. St. 514); *Saddler v. Lee*, 42 Am. Rep. 62 (66 Ga. 45); *Burroughs v. Saterlee*, 56 id. 350 (67 Iowa, 396).

The opinion of the court was delivered by

JOHNSTON, J. : In his petition Keys averred that, ever since the settlement of the section of the country in which the farm is situate, there has been a distinct natural water-course running in an easterly and north-easterly direction through his land, which conducted large quantities of water from the hills lying west and northwest of his land, and that prior to the building of the railroad the water passed freely and unobstruct-edly eastwardly from plaintiff's land along the water-course, but since the building of the railroad, and owing to the incomplete, inadequate and improperly-located openings for the passage of water coming down the natural water-course across the right-of-way of the railway company, and beneath its tracks, the water had accumulated and remained in great quanti-ties over the plaintiff's land, damaging and destroying his crops, for which he asked judgment in the sum of $1,999.

It appears that the plaintiff's land is situated in section 31, while the railroad is constructed on sec-tion 32. Between sections 31 and 32 there is a high-way, and immediately east and running parallel with the highway the railroad was constructed. The water-course, which came from the hills on the west, was known as "Crow creek;" and, while there was some controversy as to the character of the stream, the tes-timony is sufficient to show that it should be treated and regarded as a natural water-course. The creek formerly meandered through Keys's farm in an easterly and northeasterly direction, being somewhat crooked, and flowed out across the section-line into section 32, until it found its outlet in the Verdigris river. For the purpose of straightening the course of the creek

through his premises, Keys dug a large ditch directly east through the center of his land, which carried the water into the highway, and from that point he dug two ditches in a southerly direction along the highway until they reached the original channel of the creek. After this new channel was made, the original channel of the creek through plaintiff's premises, and which passed across the highway and under the point where the railroad was built, was completely filled up and water no longer flowed there. This was the situation when the railroad was built. It was constructed parallel with the ditches that were dug in the highway, and not across the artificial channel which was dug through Keys's premises. Some claim is made by the railway company that the artificial channel through Keys's land is not to be treated as a water-course, and that the obstruction of the same would give no right of action for the resulting injury. It appears that the ditch was dug not merely for the drainage of the land but as a channel for the flow of the water of a natural water-course. It had remained open and had been treated as a water-course for a number of years before the construction of the railroad, and therefore is to be governed by the same rules as other water-courses. Keys, as the owner of the land, had a right to change the channel and divert the water of Crow creek, provided he returned the water to the same channel before it reached the land of the proprietor below. It appears, however, that Keys did not return the water to the channel of Crow creek upon his own land, but carried it out into the highway and conducted it down the highway in ditches to the original channel. It is true, as contended, that he has no right to divert the water of the stream from its channel and precipitate it in a body upon the adjoining land to the

1. Water-course — diversion by riparian owner.

injury of the owner. The proprietor of the adjoining land would have the right to erect an embankment across the course of the water and thus keep it off his land, and the party who had wrongfully diverted the water of the stream could not complain if the embankment thus made would have the effect of turning the water back upon his own land. No complaint, however, is made by the public authorities in charge of the highway by reason of the diversion of the stream and the discharge of the water into the highway ; and if the ditches dug were reasonably sufficient for the purpose, and there has been acquiesence and consent to such diversion by the public authorities, the railway company cannot complain for them nor derive any advantage from the change of the channel in the lands above its right-of-way. The turning of the stream from its original channel gave the railroad company no right to interrupt or obstruct the new channel, and if it was interrupted or obstructed to the injury of an upper landowner, he is entitled to recover for any damages he may suffer in consequence of such obstruction. The railroad, however, was not built across the ditch upon Keys's land, nor does it appear from the findings of the court that it was built across the ditches constructed by him in the public highway. As we have seen, the highway lay between Keys's land and the right-of-way of the railroad company, and we do not understand that the ditches or water-course were crossed or changed by the company in the building of its road. The case appears to have been decided upon the theory that it was the duty of the railroad company to make an opening through its embankment to carry off the water which might overflow the ditches which Keys had constructed, and because it failed to make an opening which would discharge the overflow in a

body upon the land below, the company was held
liable.    The court found that in time of high water,
before the construction of the railroad, when there
was an overflow of the stream, it flowed over the
public highway, through openings under the high-
way, and made its escape into the original channel,
and thence into the Verdigris river.   The court finds,
as the cause for the injury, and as a basis for the re-
covery which was allowed, that "the railroad grade
of defendant's railroad along the east side of plain-
tiff's premises is about three or four feet high, and in
times of heavy rains it dams up the mouth of plain-
tiff's ditch where it emerges from his premises, fills it
with mud and sediment, and the accumulated water
backs up from the railroad grade and overflows nearly
all of plaintiff's premises and destroys his growing
crops."    As we have seen, the railroad was not con-
structed over the ditch which emerges from plaintiff's
premises, nor did that ditch reach the right-of-way of
the railroad upon which its grade was constructed.
There was no duty resting on the railroad company
or any proprietor of the lower land to provide an out-
let for the overflow of Crow creek or of the ditches
into which it was turned.    In changing the channel
of the creek it was the duty of Keys to make the new
channel sufficient not only for the ordinary flow of
water in the stream, but also for such as might be
reasonably expected to occur.    The overflow of the
stream where it emerged from Keys's land, and which
spread out over the highway and crossed the land
upon which the railroad was built, was
not confined to any channel, and had none
of the characteristics of a water-course.    It
was practically surface-water, which is re-
garded as an outlaw, against which any landowner
affected may fight.

2. Surface-
water,
a common
enemy.

" The simple fact that the owner of one tract of land raises an embankment upon it which prevents the surface-water falling and running upon the land of an adjoining owner from running off said land, and causes it to accumulate thereon to its damage, gives to the latter no cause of action against the former ; nor is the rule changed by the fact that the former is a railroad corporation, and its embankment is raised for the purpose of a railroad track, nor by the fact that a culvert could have been made under said embankment sufficient to have afforded an outlet for all such surface-water." ( *Railroad Co. v. Hammer*, 22 Kas. 763. See, also, *Railroad Co. v. Steck*, 51 Kas. 737 ; *Railroad Co. v. Renfro*, 52 id. 237.)

While a landowner cannot obstruct a water-course, or divert a stream of water so as to cause injury to another, without being responsible therefor, it is well settled under the common law which prevails in this

3. Obstructing the flow of surface-water.

state that an owner has the right to obstruct and hinder the flow of mere surface-water upon his land from the land of other proprietors, and he can even turn the same back upon the land of his neighbor without incurring liability for injuries caused by such obstruction. Under this rule, Keys had no right to have the surface-water flow across the right-of-way of the railroad company, but on the contrary it had a right to protect itself by building an embankment without openings or waterways in order to prevent the water crossing its right-of-way, and any injury caused thereby is *damnum absque injuria.* ( *Pettigrew v. Evansville*, 25 Wis. 236 ; *Hoyt v. City of Hudson*, 27 id. 656 ; *O'Connor v. Railway Co.*, 52 id. 526 ; *Turner v. Dartmough*, 13 Allen, 291 ; *Bowlsby v. Speer*, 2 Vroom. 351 ; *Swett v. Cutts*, 50 N. H. 439 ; *Preston v. Hull*, 42 N. W. Rep. [Iowa] 305 ; *Morris v. Council Bluffs*, 67 Iowa, 343 ; *McCormick v. Railroad Co.*, 57 Mo. 433 ; *Abbott v. Railway Co.*, 83

id. 271 ; *Jones v. Railroad Co.*, 34 id. 151 ; *Schneider v. Railway Co.*, 29 Mo. App. 68 ; 24 Am. & Eng. Encyc. of Law, 903.)

As the recovery of the plaintiff below was largely based upon the failure of the railway company to provide openings for the flow of surplus water, it cannot be sustained.

The judgment of the district court will be reversed, and the cause remanded for another trial.

ALLEN, J., concurring.

HORTON, C. J., not sitting.