T. C. SINGLETON *et al.* v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY.

No. 13,195. (72 Pac. 786.)

SYLLABUS BY THE COURT.

WATERCOURSE — *High-water Channel.* A channel or other depression in the ground forming the bank of a river through which water escapes and flows from the river only at times of high water does not constitute a natural watercourse, and obstructing the flow of water therein from the river, to the injury of another, is *damnum absque injuria.*

Error from Wilson district court; L. STILLWELL, judge. Opinion filed June 6, 1903. Affirmed.

*S. S. Kirkpatrick*, for plaintiffs in error.

*A. A. Hurd*, and *O. J. Wood*, for defendant in error.

The opinion of the court was delivered by

POLLOCK, J. : This action was brought by T. C. and S. M. Singleton against the railway company to recover damages caused by the obstruction of an alleged watercourse which produced an overflow of plaintiffs'

lands, destroying crops growing thereon. The jury returned a general verdict for plaintiffs, with answers to special questions as follows :

"1. When was the railroad embankment across plaintiffs' lands which they allege caused their damages constructed?' A. In 1886.

"2. What company constructed said embankment? A. Chicago, Kansas & Western Railroad Company.

"3. What company owned the line of railroad running across plaintiffs' lands in May, 1898, and which they allege caused the damages complained of in their petition? A. Chicago, Kansas & Western.

"4. What company was operating said line of railroad in May, 1898? A. Atchison, Topeka & Santa Fe Railway Company.

"5. Is the land of plaintiffs mentioned in their petition bottom land? A. It is.

"6. Are there any hills or bluffs on or around the land described in plaintiff's petition? A. Higher ground east of railroad, but no defined bluffs.

"7. Did any water of any consequence flow into the depression alleged to be a natural watercourse except such as in times of very high water in the Verdigris river overflowed its banks, flowed over such depression across a portion of plaintiffs' lands, and again flowed into said river south of plaintiffs' lands? A. Very little water flows into depression except what flows from river at times of reasonably high water.

"8. Does the depression claimed by plaintiffs to be a natural watercourse extend to any high bluffs? A. No.

"9. Did any of the water that flowed into or through said depression come from high bluffs or gorges between bluffs? A. No."

"11. For what distance does said depression extend over lands of the plaintiffs? A. From the river to railroad.

"12. Did any water except surface-water falling upon a portion of plaintiffs' lands flow through said depression across plaintiffs' lands except when the

Verdigris river overflowed its banks? A: Yes, when river was three-fourths full.

"13. If you answer the last preceding question in the affirmative, then state what portion of the year, if any, water flowed through said depression, and from what source. A. During the time of freshets; from the Verdigris river.

"14. Is it not a fact that, prior to the construction of the railroad embankment complained of in plaintiffs' petition, persons owning land east and southeast of said line of railroad dug a ditch or drain in the direction of a watercourse which flowed from the high land where the town of Benedict is situated, which said named watercourse flowed through 'Reed's branch' into the Verdigris river? A. Yes, for the purpose of draining some swampy land east of the natural watercourse in question.

"15. Did not the water flowing through said depression, during the time of an overflow of the Verdigris river, again flow into said river through said 'Reed's branch'? A. Yes.

"16. Is not the land south and southeast of the point where said depression intersects the line of said railroad now in cultivation? A. Yes.

"17. How much of plaintiffs' land lying south and east of the Verdigris river was in cultivation in May, 1898? A. About eighty acres.

"18. What kind of crops, if any, were growing on plaintiffs' land lying south and east of the Verdigris river in May, 1898? A. Corn.

"19. In the event that you find for the plaintiffs, then state how much you award them for injury to crops on the south and east side of the Verdigris river, and also for injury to crops on the north and west side of river, to wit. A. South and east side of river, $80; north and west side of river, $1020."

On motion judgment for costs was entered for defendant on the special findings, notwithstanding the general verdict. Plaintiffs bring error.

The findings of the jury sufficiently disclose the na-

ture of the case and render a statement of the facts unnecessary.   The propositions relied on in support of the judgment rendered are that no natural watercourse was obstructed; and consequently defendant is not liable.   The property overflowed was situate in a bend of the Verdigris river.   The findings disclose that in times of high water, when the banks of the river were three-fourths filled with water, at the place in question a portion of the water would leave the regular channel, flow across the bend, and again intercept the regular flow lower down the river.   The question is, Does the obstruction of the flow of water under such conditions constitute the obstruction of a natural watercourse and render the obstructor liable for ensuing damages ?   The solution of the problem depends on the legal definition of the term "watercourse" or "natural watercourse"; for if water so flowing be surface-water, as contradistinguished from water flowing in a natural watercourse, it is conceded to be a common enemy against which all may lawfully impose obstruction at will.

This court has considered questions akin to that here presented.   It is contended by counsel for plaintiffs that the findings of the jury bring this case within the definition of a natural watercourse as stated in *Palmer v. Waddell*, 22 Kan. 352, and as limited in the of case *Gibbs v. Williams*, 25 Kan. 214, 37 Am. Rep. 241. In *Palmer v. Waddell*, it was held:

"Where surface-water having no definite source is supplied from falling rains and the melting snow from a hilly region or high bluffs, and owing to the natural formation of the surface of the ground is forced to seek an outlet through a gorge or ravine, and by its flow assumes a definite or natural channel, and escapes through such channel regularly during the spring months of every year, and in seasons of heavy

rains, and such has always been the case so far as memory of man runs, *held*, that such accustomed channels through which the waters flow may fairly be said to possess the attributes of a natural water-course."

In *Gibbs v. Williams*, 25 Kan. 214, it was held:

"In order to create the exception noticed in *Palmer v. Waddell*, 22 Kan. 352, it is not sufficient that the conformation of the surface be such that the water falling on a large tract of land naturally flows upon and over a depression at one end of that tract; there must be a necessity for the outflow over this depression in order to prevent the flooding of a considerable body of land, and there must be a distinct channel, with well-defined banks, cut through the turf and into the soil by the flowing of the water; the bed of a stream, or something which will present on casual glance to every eye the unmistakable evidences of the frequent action of running water."

The case of *Palmer v. Waddell* is one frequently commented upon, and this court has declared its intention not to extend the doctrine there announced. In *K. C. & E. Rld. Co. v. Riley*, 33 Kan. 374, 380, 6 Pac. 581, it was said:

"That is an extreme case, and is limited to surface-water from hilly regions or high bluffs, draining considerable tracts of land through a gorge or ravine, for such a flow as to make a definite or natural channel. The cases of *Gibbs v. Williams*, supra, and *Railroad Co. v. Hammer*, supra, decided subsequently to *Palmer v. Waddell*, show that the terms of that decision were never intended to be broadened."

Again, in *C. K. & N. Rly. Co. v. Steck*, 51 Kan. 737, 742, 33 Pac. 601, it was said:

"Defendant in error relies upon *Palmer v. Waddell*, 22 Kas. 352, but that case fails to sustain his claim. There the surface-water which flowed from a hilly region and accumulated on the lowlands passed through

a gorge or ravine, and the flow through this gorge was such as to make a defined channel, which possessed the attributes of a natural watercourse.  That has always been regarded as a border case, and the court has since refused to extend it.''

Hence, if the facts in the case at bar are not clearly within the rule stated in *Palmer v. Waddell*, as that doctrine is limited in *Gibbs v. Williams*, we must decline to be concluded thereby.  The findings of the jury in the case at bar, when examined, show the conditions present entirely dissimilar from those existing in that case.  There, water from rain or melting snow, on account of the elevation and contour of the surrounding country, at certain seasons of each year and under ordinary circumstances was collected and carried through a well-defined channel into the Missouri river.  In the case at bar, when there was a rise in the Verdigris river water left its accustomed channel and sought a different route to the same river lower down.  In that case the water was obstructed in its ordinary and accustomed flow to its outlet in the river.  Here the obstruction interposed is to the flow from its accustomed course under extraordinary circumstances.  Hence we are of the opinion that upon the facts as found the case must be ruled by the principles applicable to the rights of the owner of property near a river to throw up levees or to fence against the overflow from the river.

This court, in *Mo. Pac. Rly. Co. v. Keys*, 55 Kan. 205, 40 Pac. 275, 49 Am. St. Rep. 249, held:

''Waters which have overflowed the banks of a stream during a freshet in consequence of the insufficiency of the channel to hold and carry them off are surface-waters, to be treated as a common enemy, against which any landowner affected may protect himself.''

In *Lamb v. Reclamation Dist. No. 108*, 73 Cal. 125, 134, 14 Pac. 625, 2 Am. St. Rep. 775, it was held:

"The reclamation district has a right to construct and maintain the levee across the mouth of a slough through which, in times of flood, a part of the waters of the river was accustomed to flow and escape upon the adjoining low lands."

The decision in that case was based upon the reasoning employed in *Rex v. Commissioners*, 8 Barn. & C. 355. In the opinion, it was said:

"We do not think that Wilkins slough, as between appellant and respondent at least, is to be treated as a watercourse, within the legal meaning of that word. It occasionally happens that a river, in its course from its source to its mouth, divides into two main, permanent channels, each carrying continuously a large part, if not a moiety, of its waters at all stages, and either uniting with the other at a lower point, or continuing to the sea, leaving a delta between the two. But there is nothing here resembling that condition. Wilkins slough is not a channel or fork, continuously carrying a large part, or any part, of the waters of the Sacramento river. It carries no water at all except 'in times of flood,' and then the amount which it carries, when compared with the volume of water in the river, is insignificant. In fact, it has no original water of its own at all, but is simply a conduit by which occasionally some of the flood water of the river escapes into the lower lands adjoining. This same office is performed by every other low place along the bank; and every other part of the levee could be removed as a nuisance if that part of it which is at Wilkins slough can be so removed."

In the case of *The Cairo and Vincennes Railroad Company v. Stevens*, 73 Ind. 278, 38 Am. Rep. 139, it was laid down as a general rule in Indiana:

"The owner of land may, upon the boundaries thereof, not interfering with any natural or prescrip-

tive watercourse, erect such barriers as he may deem necessary to keep off surface-water or overflowing floods coming from or across adjacent lands ; and for any consequent repulsion, turning aside or heaping up of these waters to the injury of other lands, he is not responsible."

In the case of *Taylor, Administrator, v. Fickas*, 64 Ind. 167, 31 Am. Rep. 114, it appears there were frequent overflows of the Ohio river.  The defendant had planted a row of trees on his own land, the effect of which was to cause the driftwood which before had been carried by the overflow across and beyond the plaintiff's land, without damage to him, to lodge upon the plaintiff's land and cover five acres of it with driftwood and brush from two to sixteen feet high, whereby said five acres became of no value.  It was held that this gave the plaintiff no right of action, because the overflow was the result of temporary causes not usually existing.

Under the facts as found by the jury, we are inclined to the opinion that the case at bar cannot be distinguished in principle from the foregoing cases. The judgment for defendant based thereon is right and must be affirmed.  This conclusion renders consideration of the further question raised unnecessary.

All the Justices concurring.