## W. G. BRYANT v. CARRIE MERRITT.
### No. 13,919. (80 Pac. 600.)
### SYLLABUS BY THE COURT.

WATERS AND WATERCOURSES—*Surface-waters.* An action for damages cannot be maintained in this state against one who embanks against surface-waters to protect his own property, thereby causing such waters to remain on, or flow over, the lands of another, to his damage.

Error from Cherokee district court; WILLIAM B. GLASSE, judge. Opinion filed April 8, 1905. Reversed.

*E. M. Tracewell,* and *S. C. Westcott,* for plaintiff in error.

*C. A. McNeill,* and *Edward E. Sapp,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: Carrie Merritt was the owner of a small tract of land in the city of Galena, upon which she erected a building and placed therein an engine, boiler and pipes for the purpose of operating a greenhouse. In 1889 the defendant purchased the adjoining lots, and erected and put in operation a foundry and machine-shop thereon. The present action was brought by Carrie Merritt to recover damages alleged to have been sustained: (1) To her real estate, by the defendant's having filled up his lots so that the surface-water flowed by defendant's premises and upon those of plaintiff; (2) for the total destruction of her property as a greenhouse by steam, hot air, gas and cinders emitted from defendant's foundry and cast into and upon her building, thereby rendering it wholly useless for growing bulbs and plants; (3) for loss of certain plants and bulbs which she had in stock, and which were killed by the hot air, gas,

Bryant v. Merritt.

steam and cinders cast upon them by the defendant in the operation of his foundry and machine-shop. Plaintiff recovered judgment and defendant prosecutes error.

The serious question raised by plaintiff in error grows out of his contention that plaintiff below was permitted to recover damages for injury to her real estate occasioned by surface-water which flowed over her premises after the defendant had filled up his lots. To meet this contention the defendant in error urges that such injury was not submitted to the jury on the trial of the cause, and was not an ingredient, or element, considered by them in determining the extent of the injury to plaintiff's real estate. The question really is, Was such element of damage before the jury? Pertinent to this inquiry the following allegations are found in plaintiff's petition:

"That by reason of said erection of said foundry and its adjacent buildings, all by and adjacent to the property of this plaintiff, and the throwing up of a large amount of dirt in and about the same, the water that would have naturally passed away from plaintiff's premises without injury to same, and into the sewer, was diverted from its regular course, and, each and every time a rain of any magnitude would fall, would cause the water to back up and run over said premises, and said water, together with said smoke, fire, heat, cinders, and gas and steam, descended upon plaintiff's premises to that extent and degree that the same became a nuisance, and that it had been carried on in said manner for a period of about fifteen months."

At the trial the plaintiff testified as follows:

"Q. You spoke awhile ago of their throwing up some dirt, or some embankment; where was that? A. Up next to the railroad-track.

"Q. What effect, if any, did that have upon your property? (Question objected to on the ground that it is incompetent, irrelevant, and immaterial, which objection was by the court overruled, to which ruling

18—71 KAN.

of the court the defendant then and there excepted.) A. It stopped the chance to drain off the water that came down through there. There was an open sewer south of the track that carried off all the water, and I was not troubled with that until after they did that, and then the walks would sink and rise half-way up the grade. Before that I was not troubled with water; and it was impossible, no matter how cold the weather was, I could not have a fire."

Counsel moved to strike out that portion of the testimony, or answer, beginning with the words "Before that I was not troubled with water," etc., which was denied, and excepted to. Testifying further, she made answer as follows:

"Q. You say it ran from the railroad-track over your ground? A. Yes, sir.

"Q. When? A. In that same fall, after the foundry was built there.

"Q. How many times did it do that? A. Every time we had a rain that amounted to anything.

"Q. Where did that water come from? A. From the east and down through the lumber-yard, and it raised up there until it overflowed my place.

"Q. It came around the lumber-yard? A. Yes, sir; it came through the lumber-yard. You understand the ground is filled up farther than my place, and the water came from that way and came in."

The defendant made the following application to the court:

"We now ask that the court strike out and take from the jury all of the testimony which was introduced here yesterday, on the question of water overflowing the land of the plaintiff, for the reason that the testimony shows that the only water which did overflow her land was mere surface-water, and for that reason we say that should not be considered by the jury in determining the question of damages as to the real estate of this plaintiff."

This motion was denied. After stating the nature of plaintiff's business and the proximity of her premises to those of defendant, and the claim made by

plaintiff, the court further informed the jury as follows:

"The defendant erected on his premises, adjacent to hers on the south, a foundry and machine-shops, and in conducting them so raised the ground on his premises as to turn on her premises the flow of surface-water, which had theretofore flowed in a direction away from her premises, and then so conducted his business at such foundry and machine-shops as to create great quantities of smoke, soot, cinders, steam, and gas, which were carried and wafted over, on and into her green- or hothouse, and destroyed more than $100 worth of her plants and flowers, and greatly injured the balance, and to the extent that her business was destroyed; and further, that the operation of said foundry and machine-shops made disagreeable noises, all of which rendered her premises unfit and useless for the purposes for which she had fitted and used them, and depreciated the value of her real estate to the extent of $1500, and she was compelled to abandon her premises and remove to another site, at great expense. The expense incident to such removal is not, however, a matter for your consideration."

We think the liability of the defendant for damages to the plaintiff for injuries resulting from the surface-water was before the jury, and, as the case was submitted to them, they were at liberty to find for plaintiff for any injury they thought she had sustained thereby. Under the well-settled rule in this state, no liability is incurred for turning surface-water upon the premises of another or for damming against such water. (*Mo. Pac. Rly. Co. v. Keys,* 55 Kan. 205, 40 Pac. 275, 49 Am. St. Rep. 249; *Singleton v. Railway Co.* 67 id. 284, 72 Pac. 786.) We think this question should not have been submitted to the jury, and for this error the judgment must be reversed.

Plaintiff in error calls our attention to the rule adopted by the court in proving damages. There is some justification for complaint. It appears, how-

ever, that this was but an inadvertence, and, since the cause will be retried, it is probable that the rule will be more strictly observed on the retrial.

The judgment of the court below is reversed, and the cause remanded for further proceedings.

All the Justices concurring.