## SANDSTRUM v. MISSOURI PAC. R. CO.
### No. 772.

District Court, D. Kansas, Second Division.
March 30, 1925.

J. E. Torrance and O. W. Torrance, both of Winfield, Kan., for plaintiff.

W. P. Waggener and J. M. Challiss, both of Atchison, Kan., and O. H. Bentley, of Wichita, Kan., for defendant.

POLLOCK, District Judge.

The facts of this case, as pleaded, are substantially as follows:

The plaintiff is the owner of a large body of farming lands in Cowley county, this state, through which flows a stream called Grouse creek. Some twenty years ago there was constructed through parts of the land of plaintiff a railroad now owned and operated by defendant. As this line of railway runs

through the land of plaintiff, it crosses a low swale or draw which leads from Grouse creek across the right of way to lands of the plaintiff on the opposite side of the railway from the creek. When the railroad was first constructed, and until a few years since, the track of defendant was thrown over this swale or low ground on an open trestle some one hundred feet in length which allowed the water accumulating in the draw or swale occasioned by heavy rains or storms to readily flow off across defendant's right of way into Grouse creek; and, also, in times of flood waters in Grouse creek, when that stream was swollen to the extent of overflowing its low banks, the water would follow this swale or depression up and across the right of way of defendant through this trestle work of the road onto the lands of plaintiff, but the opening was of such extent the same would readily run off when the water of the creek had gone down without harm to the lands or crops of plaintiff. However, it is charged the defendant a few years since filled up the opening under its track theretofore occupied by the trestle work in its entire length save about four feet, thus leaving an opening for the passage of the water in the swale or draw from the lands of plaintiff to the creek about four feet square. That, in consequence of this, in the year 1922, as there was in this section of the country at that time very heavy rains, the flood waters from Grouse creek passed up the draw and through the four foot opening left under its track onto the farming lands of plaintiff, and being held there for a considerable space of time, five or six days, standing on the growing crop of plaintiff, the same was destroyed to the damage of plaintiff in the sum of $5,000. That, had the trestle work of about one thousand feet been left open and not filled in, the water coming from the stream would have quickly run off into Grouse creek without injury or damage to the crop of plaintiff.

The second count claims for damages due plaintiff in the loss of his crop for the year 1923, done in like manner, in the sum of $4,000; and the third count claims for damages done the real estate of the plaintiff from the closing of the trestle way under the track, and the injury claimed on this count is in the sum of $5,000.

To this petition, and each count therein, defendant demurs.

The question is, May the defendant close up an opening under its track along a stream to such an extent that if the stream in flood times shall go out of its bank and flow along a depression or swale through the small opening in the railway embankment onto the adjoining lands and crops of plaintiff, and on account of the small size of the opening the water is there held impounded until damage is done to the land and crops which would not have occurred if the opening had been left as originally constructed on the trestle work?

The solution of this question must depend upon a further question. Is the water involved in this case, the same being overflow water from Grouse creek, surface water?

While there is an act of the Legislature of this state changing the common law rule as to surface water in certain instances, I do not find this act applies to the facts of this controversy. Hence, any construction of the law with reference to this act may be laid aside. This act reads:

"24—105. Obstructing flow of surface water. A lower owner or proprietor shall not construct or maintain a dam or levee for the purpose of obstructing the flow of surface water onto his land to the damage of the adjacent upper owner or proprietor; but nothing herein shall be construed as preventing an owner of land from constructing a dike or levee along the bank of a natural watercourse to repel flood water from such natural watercourse: Provided, That the provisions of this act shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city." 24—105, Rev. St. Kansas 1923.

Are the flood waters coming upon the land of plaintiff through the small opening in the railway embankment surface water? This question is one of local law. The Supreme Court of this state in Missouri Pacific Railway Co. v. Keys, 55 Kan. 205, 40 P. 275, 49 Am. St. Rep. 249, held:

"Waters which have overflowed the banks of a stream during a freshet, in consequence of the insufficiency of the channel to hold and carry them off, are surface waters, to be treated as a common enemy, against which any landowner affected may protect himself."

In delivering the opinion of the court, Mr. Justice Johnston quoted with approval from Atchison, T. & S. F. R. Co. v. Hammer, 22 Kan. 768, 31 Am. Rep. 216, as follows:

"The simple fact that the owner of one tract of land raises an embankment upon it which prevents the surface water falling and running upon the land of an adjoining

owner from running off said land, and causes it to accumulate thereon, to its damage, gives to the latter no cause of action against the former. Nor is the rule changed by the fact that the former is a railroad corporation, and its embankment is raised for the purpose of a railroad track, nor by the fact that a culvert could have been made under said embankment sufficient to have afforded an outlet for all such water." See, also, Chicago, K. & N. Ry. Co. v. Steck, 51 Kan. 737, 33 P. 601; Missouri Pac. Ry. Co. v. Renfro, 52 Kan. 237, 34 P. 802, 39 Am. St. Rep. 344. See, also, Singleton v. Railway Co., 67 Kan. 284, 72 P. 786.

It must, therefore, I think, be held the water leaving Grouse creek occasionally in time of high water therein, while out of the stream and flowing upon and over the lands of plaintiff and the right of way of the railway company, must be regarded and treated as surface water.

Now, with regard to the law of surface waters, two views have been adopted in different jurisdictions. One the rule of the civil law. The other, the rule of the common law. See, Thompson v. McDougal, 103 Kan. 373, 175 P. 157, and cases cited. The common law rule has been adopted as the law of this state. Chicago, etc., R. Co. v. Steck, 51 Kan. 737, 33 P. 601; Missouri Pac. Ry. Co. v. Keys, 55 Kan. 205, 40 P. 275, 49 Am. St. Rep. 249; Singleton v. A., T. & S. F. R. R. Co., 67 Kan. 284, 72 P. 786; Bryant v. Merritt, 71 Kan. 272, 80 P. 600; Darlington v. Cloud County, 75 Kan. 810, 88 P. 529; Paola v. Garman, 80 Kan. 702, 103 P. 83, and many later cases.

By this rule surface waters are regarded as a common enemy and each proprietor may make such fight upon them as he may please in the protection of his own property. The proprietor of a railway right of way has just the same right in this regard as has the owner of farms or farming lands.

As large openings, such as bridges and trestles under railway tracks, are concededly dangerous, or, at least, more dangerous in the operation of a railroad than is a solid embankment, the railroad had the undoubted right in this case to fill in its embankment, placing thereunder a solid embankment instead of a trestle, and if in so doing it obstructed the free flow of surface water from the river onto plaintiff's lands, or from plaintiff's lands to the river, to the injury of plaintiff, such injury is damnum absque injuria, and the demurrer must therefore be sustained. It is so ordered.