## WM. P. HAWLEY & N. P. HAWLEY *v.* HENRY W. SHELDON.

### *Watercourse defined.*

Where the water, flowing in a watercourse, spreads out over the surface, ceases to have and never returns to a defined channel, the character of a watercourse is lost.

Case for the obstruction of a watercourse. Plea, the general issue. Trial by jury at the December term, 1891, Taft, J., presiding. The Court directed a verdict for the defendant upon the ground that there was no evidence tending to show the existence of a watercourse. The plaintiffs except.

Wm. P. Hawley & N. P. Hawley *v.* Henry W. Sheldon.

The opinion states the case.

*J. C. Enright* and *J. J. Wilson*, for the plaintiffs.

The evidence of the plaintiffs tended to show the existence of a watercourse. *Beard* v. *Murphy*, 37 Vt. 99; *Winn* v. *Rutland*, 52 Vt. 481; *Boynton et al* v. *Gilman*, 53 Vt. 17; *Gillette* v. *Johnson*, 30 Conn. 180; *McComber* v. *Godfrey*, 108 Mass. 209, 219; *Ferris* v. *Wellburn*, 64 Miss. 29; *McClure* v. *Redwing*, 28 Minn. 187.

*Gilbert A. Davis, W. E. Johnson* and *Frank H. Clark*, for the defendant.

There was no watercourse. *Ashley* v. *Wolcott*, 11 Cush. 195; Ang. Waters, 44; Gould Waters, ss. 263, 264 and 41; and cases cited; *Bangor* v. *Lasell*, 51 Me. 521; *Avery* v. *Empire Woolen Co.*, 82 N. Y. 582; *Park* v. *Newburyport*, 10 Gray 28; *Howard* v. *Ingersoll*, 13 How. 427; *Gibbs* v. *Williams*, 25 Kan. 214; *C. K. & W. R. Co.* v. *Morrow*, 42 Kan. 339, 340, 341; 3 Kent's Com. s. 439, note a; *Rawston* v. *Taylor*, 33 Eng. L. & Eq. 428; *Broadbent* v. *Ramsbotham*, 34 Eng. L. & Eq. 553; *Luther* v. *Winnisimmet Co.*, 9 Cush. 171; *Shields* v. *Arndt*, 3 Green Ch. R. 234, 246.

The opinion of the court was delivered by

TYLER, J. The action in case for obstructing a brook or stream of water. When the plaintiffs rested, the court, on motion, directed a verdict for the defendant.

The plaintiff's evidence tended to show that certain springs in the hillside in their land ran down and formed a small pond near the highway and thence the water made its way through a ravine and spread out upon the meadow below; that in the year 1852, for the purpose of forming a channel for the water and of draining the land so they could drive upon it, they turned a furrow through the ravine, terminating within ten or twelve feet of the line fence between their land and the defendant's; that it was a deep furrow until near the lower end, when it was shallower and

·ended with a turn to one side so as to discharge the water upon the surface of the ground ; that the water that ran in the ditch mainly came from the pond ; that water ran in the ditch all the year, generally two to three inches deep by about six inches wide less than that in dry weather and considerably more in case of heavy rains and melting snows ; that in 1887, the channel having become obstructed, the plaintiffs cleared it out to about its former ·capacity ; that the water had no channel after it left the ditch ; that sometimes when low, it would disappear in the plaintiff's grass land and not visibly reach the division line, and that when it was higher it would overflow upon the defendant's land ; some of the witnesses said it " soaked through" the land between the end of the ditch and the line fence ; that it never resumed a channel after it passed onto the land of the defendant ; that the defendant with sods and sticks made an obstruction along the line upon his own and the plaintiff's land and prevented the water from entering upon his land, which is the cause of action alleged.

The case must be governed by the law relative to watercourses, which is well settled.

We have seen no better definition of a watercourse than that given by Chancellor *Williamson*, 1 Beas. Ch. R. 280 ; (72 Am. Dec. 394) : " A watercourse is a channel or canal for conveyance of water, particularly in draining lands ; it may be natural, as when it is made by the natural flow of the water, caused by the general superficies of the surrounding land from which the water is collected into one channel, or it may be artificial as in case of a ditch or other artificial means used to divert the water from its natural channel, or to carry it from low lands, from which it will not flow in consequence of the natural formation of the surface of the surrounding land." Angell on W. C. s. 4, says that a watercourse consists of bed, banks, and water, though the water need not flow continuously—that many watercourses are sometimes dry. There must be a distinct channel, the bed of the stream, with well defined banks, cut through the turf and into the soil

by the flowing of the water, presenting on a casual glance to. every eye the unmistakable evidences of the frequent action of running water, and not a mere depression. *Gibbs* v. *Williams,* 25 Kan. 214, (37 Am. R. 241).

This stream, small as the evidence tended to show it was, and small as was its channel, clearly falls within the legal definition of a watercourse. Its beginning was at the point where it first received the percolating water of the ravine and sent it down towards the meadow in one course ; its terminus was at the point where the furrow ran out and the water was discharged upon the meadow near the defendant's land.

By reason of the nature or conformation of the soil, water sometimes leaves its channel, and after spreading over a wide space without apparent banks, flows a considerable distance and again takes a regular channel, yet it maintains its character as a watercourse. *Macomber* v. *Godfrey,* 108 Mass. 219 ; *Gillett* v. *Johnson,* 30 Conn. 180. But in this case none of the plaintiff's evidence tended to show that the water ever found a channel on the defendant's land ; on the contrary, it was lost in the soil near the division line. From the end of the ditch to the fence, a distance of ten or twelve feet, there was no channel ; all the witnesses so testified. Wm. Hawley, one of the plaintiffs, was asked :

Q. " Why didn't you run it clear down to the line fence ?" A. " I didn't propose to throw all the water on to Mr. Sheldon. I didn't run it there. I left it within ten feet—I don't know just ten—ten or a dozen, and let it spread its natural course."

In answer to the question : " When it gets down to the end of the channel where does it go to," he said : "It spreads off on both farms." So it appears from his own testimony that it became mere surface water and was squandered when it reached the end of the ditch.

If this stream of water had continued in a defined channel upon and over the defendant's land, he and the plaintiffs would have acquired correlative rights in relation to it. Each party

would have had a right to its natural flow; but upon the evidence produced by the plaintiffs the defendant was not guilty of obstructing a brook or stream of water, and the court below properly directed a verdict in his favor.

*Judgment affirmed.*