Wood v. Brown.

---

No. 20,278.

FRANK WOOD, *Appellee,* v. SARAH A. BROWN and H. BROWN, *Appellants.*

SYLLABUS BY THE COURT.

WATERCOURSE—*Definition—Statute.* Section 2 of chapter 175 of the Laws of 1911, permitting an owner of land to drain the same in the course of natural drainage by constructing open or closed drains whereby water will be carried into some natural watercourse, uses the term watercourse according to its previously accepted meaning which excluded depressions lacking the characteristic of a distinct channel cut in the soil by running water and having a bed and banks discernible by casual glance.

Appeal from Bourbon district court; CHARLES E. HULETT, judge. Opinion filed July 8, 1916. Affirmed.

*Chester Ramsey,* and *John H. Crain,* both of Fort Scott, for the appellants.

*H. A. Pritchard,* and *C. E. Cory,* both of Fort Scott, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin the defendant from collecting water by means of a tile drainage system on his farm and discharging it upon the plaintiff's farm through a six-inch pipe and a ditch. The plaintiff recovered and the defendant appeals.

The six-inch pipe was laid in a ditch through what is called a hogback near the line dividing the two farms. The pipe ends on the defendant's farm nineteen feet from the line. It empties into a dug ditch leading to a depression on the plaintiff's land through which water naturally finds its way to Lath Branch, a creek emptying into the Marmaton river. The plaintiff's contention was that before the defendant installed his tile drainage system only a small quantity of surface water, not enough to interfere with use of the plaintiff's land, found its way from the defendant's land to the depression. The tile drainage system collected surface and subsurface water which would not have reached the plaintiff's land and discharged it upon plaintiff's land in such quantities that it uncovered the roots of trees, even washed out one tree, and prevented the plaintiff from farming his land. The defendant justified under the statute of 1911, which reads as follows:

"SECTION 1. A lower owner or proprietor shall not construct or maintain a dam or levee for the purpose of obstructing the flow of surface water onto his land to the damage of the adjacent upper owner or proprietor; but nothing herein shall be construed as preventing an owner of land from constructing a dike or levee along the bank of a natural watercourse to repel flood water from such natural watercourse; provided, that the provisions of this act shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporate city.

"SEC. 2. Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, whereby the water will be carried into some natural watercourse, or into any drain upon a public highway, for the purpose of securing proper drainage to such land and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person or persons or cor-

poration; provided, that owners of land constructing an outlet to a drain upon any public road shall leave the road in as good condition as it was before the drain was constructed, the question as to such condition to be determined by the board of county commissioners and the county engineer, in counties having a county engineer, and in other counties the county surveyor." (Laws 1911, ch. 175.)

The journal entry of judgment reads as follows:

"The prayer of the plaintiff's petition should be sustained to the extent that defendants should be prohibited from further permitting the discharge of water from the present outlet of the six inch tile drain from which the water runs from defendants' lands on to and across a portion of the plaintiff's lands for that there was not at such point of discharge what is known or recognized by the court as a natural water way."

The first section of the act of 1911 changed the rule that surface water is a common enemy which every landowner may fight and forbade interference by a lower proprietor with the flow of surface water from lands of an upper proprietor. The second section of the act gave landowners the right to drain their lands in the general course of natural drainage by means of open or covered drains but attached the condition that such drains should carry the water to a natural watercourse. The question is, What is a natural watercourse?

The defendant would have the term watercourse include any natural depression having reasonable limits as to width along which water is accustomed to flow. At the time the statute was enacted the term had a long-settled and well-understood meaning in this state, which accorded with the generally accepted meaning elsewhere. It excluded depressions in the land lacking the characteristic of a distinct channel cut in the soil by force of running water and having a bed and banks discernible by casual glance. (*Gibbs v. Williams*, 25 Kan. 214; *Rait v. Furrow*, 74 Kan. 101, 85 Pac. 934.) The usual signification clearly attached to the term as used in the first section of the act and the court has no reason to believe the legislature intended it should mean something entirely different in the second section. Whether or not correct rules of drainage have heretofore prevailed, the term watercourse has been employed in the law of drainage as elsewhere to distinguish a course having an eroded channel with clearly distinguishable bed and banks from simple depressions lacking that characteristic. If the legislature had intended the word should henceforth mean

the very thing from which its definition had previously distinguished it, some indication of the change would certainly have been given.

It is said that the statute was copied from a statute of the state of Illinois and that the supreme court of Illinois assigns to the word, watercourse, as used in the statute, the broad meaning for which the defendant contends. (*Lambert et al. v. Alcorn*, 144 Ill. 313, 33 N. E. 53, 21 L. R. A. 611.) What happened was this: In the earlier case of *Peck et al. v. Herrington*, 109 Ill. 611, the Illinois court, in announcing rules of law relating to drainage, in effect broadened the commonly accepted definition of watercourse to include depressions and swales. Afterwards the legislature passed an act substantially adopting the court's drainage rules. The legislature did not, however, adopt the court's definition of a watercourse. On the other hand it used the term, watercourse, in the usual sense and accomplished the purpose in view by adding the words italicized in the following transcript from the statute:

"Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water-course, *or into any natural depression, whereby the water will be carried into some natural water-course*, or into some drain on a public highway with consent of the commissioners thereto; and when such drainage is wholly upon the owner's land, he shall not be liable in damages therefor to any person or persons or corporation." (Rev. Stat. Ill. 1891, ch. 42, § 78, 3 Ill. Stat. Ann. § 4478.)

All the court had to say in the Lambert-Alcorn case about the statute, besides quoting it, is contained in the following extracts from the opinion:

"Since the decision by this court of the case of *Peck v. Herrington*, the Legislature has enacted a law, embodying substantially, in statutory form, the rule established in that case. . . . Under this statute, the land-owner draining his own land, may drain it 'in the general course of natural drainage,' and discharge the water 'into any natural water-course,' or 'into any natural depression whereby the water will be carried into some natural water-course.' The system of drainage contemplated by the defendant, and which the bill was brought to restrain, comes clearly within the provisions of this statute, as well as within the rules established by the decisions of this court." (pp. 327, 328.)

Since the Illinois legislature clearly distinguished between natural watercourses and natural depressions, it does not seem important that the Illinois court adhered to its former inclu-

sion of both in the same definition. When the legislature of this state made use of the Illinois statute it stopped with drains into natural watercourses and omitted what the defendant would have read into the act, natural depressions whereby water would be carried to natural watercourses.

The defendant by artificial means was collecting on his own land and discharging on the plaintiff's land, to the plaintiff's injury, water which would not otherwise reach the plaintiff's land and water which would reach the plaintiff's land in sufferable quantities and in a sufferable way. The defendant had no prescriptive right to do this because he utilized an old ditch in laying the six-inch pipe. There was evidence that he did more than simply clean out the ditch in order to lay the pipe. The action was not barred by any statute of limitations. Sufficient objection by the plaintiff to defendant's conduct appears in the transcript of the evidence to prevent application of estoppel, which was not pleaded.

The judgment of the district court is affirmed.