No 21,178.

## M. S. EVANS, *Appellee,* v. PIUS DIEHL, *Appellant.*

### SYLLABUS BY THE COURT.

1. INJUNCTION—*Drainage Ditch—Findings.* Findings of fact upon which a judgment enjoining the maintenance of a drain and ditch was based, examined, and no substantial conflict discerned therein.

2. SURFACE WATER—*Drainage Ditch—Depression—No Watercourse.* A depression in a plaintiff's land of lower elevation than a depression in defendant's land, and into which waters from defendant's depression flow in times of heavy rain, is not necessarily a natural watercourse into which the defendant may lawfully drain the waters from his depression under section 2 of chapter 175 of the Laws of 1911 (Gen. Stat. 1915, § 4051).

3. SAME. A depression into which surface and standing waters may be drained is not necessarily a natural watercourse merely because flood waters from a neighboring river find their way into that depression when the river is in flood.

4. SAME—*Findings of Trial Court Conclusive.* Where there is room for differences of opinion in the determination of an ultimate and controlling fact, the opinion and judgment of the trial court thereon is conclusive on appeal.

5. SAME—*Depression Not a Natural Watercourse—Injunction Allowed.* Defendant constructed a drain and ditch on his own land, in the natural course of drainage towards the land of plaintiff, which drain and ditch discharged their waters into a lower depression on plaintiff's land, but such lower depression was not a natural watercourse. *Held,* that such ditch and drain were not authorized by section 2 of chapter 175 of the Laws of 1911 (Gen. Stat. 1915, § 4051) nor otherwise, and were properly enjoined.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed April 6, 1918. Affirmed.

*C. W. Burch, B. I. Litowich,* and *La Rue Royce,* all of Salina. for the appellant.

*Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a decree enjoining the defendant from maintaining a tile drain constructed by him to draw off surface and standing water from his own land,

and which cast it on neighboring land belonging to the plaintiff. ·

The lands of plaintiff and defendant lie in the west half of section 24, township 13 south, range 1 west, near the Solomon river in Saline county. The plaintiff's land lies north of defendant's, and they are separated by the right of way of the Rock Island railway, which runs in a northeasterly direction in that locality. There is a depression of an old river bed on plaintiff's land near the Solomon river, just north of the railway, but this depression does not drain into the Solomon, except when the latter is in flood, at which time the river overflows into plaintiff's depression and fills it; and if the river flood be high enough the water backs still further— through a culvert in the railway into a depression of another ancient river bed on defendant's land. The old river bed on defendant's land, more elevated than plaintiff's, is a swale where surface water accumulates to a depth of a few inches, perhaps two feet at the most. When more surface water than that amount accumulates, it starts to flow northeastward through defendant's land and through the railway culvert into the depression or old river bed in plaintiff's land. For the most part, the general lay of the land south of the railway, on defendant's land and for some distance west of it, is in a northeasterly direction. A ditch on the south side of the railway drains part of the surface water of that locality. This railway ditch empties through the railway culvert into plaintiff's old river bed. If the rainfall is unusual, this railway ditch overflows and its waters find their way towards defendant's land and into the depression thereon, and if their volume be sufficient such waters flow, with the other accumulated waters in that depression, over a slight natural ridge or barrier near the north side of defendant's land and through the railway culvert into plaintiff's land.

The drain and ditch enjoined in this lawsuit were constructed by defendant in the depression of his land and through this slight natural barrier to the railway ditch, and the waters of this drain and ditch are thus discharged into the railway ditch and thence through the railway culvert into the depression or old river bed in plaintiff's land. The drain is laid in the same general course taken by the waters when the

latter are high enough to flow. In ordinary years the plaintiff's depression is fit for farming and is farmed, notwithstanding the discharge of waters into it from the ordinary drainage of the railway ditch; but if it has to receive, in addition thereto, the waters which commonly stand in defendant's depression and which are held therein by the slight natural barrier at the north side of defendant's land, about eight or ten acres of plaintiff's land will ordinarily be rendered unfit for farming. Defendant's drain and ditch, if not enjoined, would make six or eight acres of his land fit for farming.

The trial court made extended findings of fact upon which it based its judgment enjoining the maintenance and use of defendant's drain; and it is the contention of defendant in this appeal that upon the facts found by the court the judgment should have been for defendant, and not for plaintiff.

The principal and only important issue in the case was whether the depression or old river bed in plaintiff's land was a natural watercourse for the outlet of surface and standing waters from defendant's land. (Laws 1911, ch. 175, § 2, Gen. Stat. 1915, § 4051; *Wood v. Brown*, 98 Kan. 597, 159 Pac. 396.) On this point the trial court's controlling findings are—

"1. . . . The north portion of this [plaintiff's] river bed is the shallowest and has an outlet into the [Solomon] river about fourteen feet above low water in the river. The deepest point in this [plaintiff's] river bed is . . . [near] the Rock Island track. . . .

"4. . . . The water falling upon the land south of the railroad and west of this culvert [16 feet wide and 10 feet high] . . . collects on the low lands and part of it follows the ditch on the south side of the grade of the Rock Island Railroad. down through the culvert mentioned and through the same into the river bed upon plaintiff's land. . . . Some of it flows across the southeast quarter of section twenty-three [adjoining land west of defendant's] and into a low place and follows what is called a ravine through the south portion of the southeast quarter of section twenty-three into defendant's said depression or river bed, and, in the times of heavy and excessive rains, a portion of such water flows into said Rock Island ditch and thence under the railroad culvert mentioned, and into plaintiff's river bed. . . . In case of excessive and heavy rains the water following the south side of the railroad track overflows the railroad ditch into defendant's depression or river bed and follows the same in its course through the southeast quarter of section 23 around through defendant's land, a large part of it emptying into plaintiff's river bed. In times of excessive and heavy rains a large portion of the surface water which collects upon the land south of the Rock Island track and west from this culvert, for a distance

Evans v. Diehl.

of two miles through these different depressions, flows through the said culvert into plaintiff's river bed.

"9. In the years 1903, 1904, 1908, 1915, the Solomon river entered plaintiff's river bed from the north and backed through the railroad culvert and flowed into defendant's river bed or depression.

"11. Defendant's tile drain extends in about the same direction as the surface water flows in times of excessive rains and when such water is high enough to flow over the elevation at the north side of defendant's land. . . .

"14. The natural formation between plaintiff's land and defendant's land is such that without ditches no water will enter upon plaintiff's land from defendant's land until water. has accumulated upon defendant's land to a depth of at least two feet, on account of a natural elevation or barrier on the north and northeast of defendant's land ranging in height from two to six feet.

"17. The years 1903, 1904, 1908, and 1915, as mentioned in finding numbered nine, are shown by the evidence to have been 'flood years,' the rain falling upon the territory drained by the Solomon river having been unusual and extraordinary.

"20. Defendant has no outlet for water flowing upon his land from the higher land west of it except through said culvert in the plaintiff's river bed.

"21. Plaintiff has no outlet for water flowing upon his land from defendant's land. [But see finding No. 1.]

"24. In order to construct his title drain it was necessary for the defendant to cut through a barrier or natural elevation about five feet high near the north line of his farm."

Defendant says that findings 14 and 24 concerning the "barrier" are inconsistent with every other finding made by the court. It is possible that the trial court miscalculated the height of the "barrier," but that is unimportant. Since the depression in defendant's land lies at a greater elevation than plaintiff's old river bed, a barrier of some height must intervene, otherwise the water would not stand in plaintiff's depression to any extent. But for some barrier, surface water would not accumulate to a depth of a few inches or up to two feet before it would flow without artificial tiling and drainage onto plaintiff's land. Moreover, no matter how high the barrier, since it was in defendant's own land, he might cut through that barrier if the water to be discharged thereby were carried into a natural watercourse. Section 2 of chapter 175 of the Laws of 1911, in part, reads:

"Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, whereby the water will be carried into some natural watercourse. . . . for the purpose

of securing proper drainage to such land and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person, etc." (Gen. Stat. 1915, § 4051.)

The trial court found that the plaintiff's old river bed, into which defendant drains his land, is not a natural watercourse. Since there is no well-defined channel therein through which the waters can flow into some indisputable natural watercourse in that vicinity—like the Solomon river, for example— this court cannot disturb that finding unless the other findings are irreconcilable with that finding.

In *Wood v. Brown*, 98 Kan. 597, 159 Pac. 396, a natural watercourse was defined:

"Section 2 of chapter 175 of the Laws of 1911, permitting an owner of land to drain the same in the course of natural drainage by constructing open or closed drains whereby water will be carried into some natural watercourse, uses the term watercourse according to its previously accepted meaning which excluded depressions lacking the characteristic of a distinct channel cut in the soil by running water and having a bed and banks discernible by casual glance." (Syl.)

(See, also, *Palmer v. Waddell*, 22 Kan. 352; *Gibbs v. Williams*, 25 Kan. 214, syl. ¶ 2.)

In *C. K. & N. Rly. Co. v. Steck*, 51 Kan. 737, 741, 33 Pac. 601, it was said:

"But to constitute such a watercourse 'there must be a channel, a bed to the stream, and not merely low land, or a depression in the prairie over which water flows. It matters not what the width or depth may be, a watercourse implies a distinct channel, a way cut and kept open by running water; a passage whose appearance, different from that of the adjacent land, discloses to every eye, on a mere casual glance, the bed of a constant or frequent stream.' (*Gibbs v. Williams*, 25 Kas. 214.)"

(See, also, *Rait v. Furrow*, 74 Kan. 101, 85 Pac. 934.)

This court can discern no substantial conflict in the findings. The findings that defendant's depression is higher than plaintiff's old river bed, that surplus waters occasioned by heavy rains flow in the general direction in which defendant's drain was laid, and that in times of extraordinary floods in the Solomon that river overflows into plaintiff's river bed and backs its waters through the railway culvert into defendant's depression, do not necessarily compel the conclusion that plaintiff's depression is a natural watercourse. Opinions on that proposition, on that ultimate fact, might differ; but since there is room for

differences of opinion, the determination of the trial court must govern.

In *Perkins v. Accident Association,* 96 Kan. 553, 555, 152 Pac. 786, it was said:

"It can avail naught that this court might think the evidence rather meager to warrant that conclusion. This was a case where judges might entertain an honest difference of opinion, but the determination of the facts was strictly within the province of the trial court, and its finding is conclusive."

The court has not overlooked the authorities cited by defendant; but the finding that the plaintiff's river bed is not a watercourse forecloses all controversy as to the right of defendant to collect his surface and standing waters and, by drainage, to discharge them upon plaintiff's land.

Affirmed.