No. 33,838

W. H. DYER, *Appellant*, v. MAUDE STAHLHUT and JOHN HEITMAN, *Appellees*.

(78 P. 2d 900)

Opinion filed May 7, 1938.

*M. P. Shearer,* of Wichita, for the appellant.

*Glenn Porter, Getto McDonald, Dwight S. Wallace* and *William Tinker,* all of Wichita, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: It was sought in this action to obtain a mandatory injunction for the removal of an alleged obstruction to the drainage of surface water on agricultural land outside the limits of an incorporated city. John Heitman was merely joined as a party defendant by reason of the fact he was the tenant of the principal defendant. The parties will be referred to as plaintiff and defendant.

It is contended the findings of fact made by the trial court do not support the judgment. The findings read:

"1. The plaintiff is and has been since the year 1932, the owner of the south three quarters (S¾) of the west half (W½) of the southwest quarter (SW¼) of section thirty-two (32), township twenty-nine (29) range one (1) west, Sedgwick county, Kansas. From the period of 1924 to 1932, the said plaintiff was in charge of said land as agent for his father's estate. That the said land was a part of the original government homestead of his father and the plaintiff was born and raised on said homestead.

"2. That the defendant, Maude Stahlhut, is at the present time and has been for some nineteen years, the owner of the east half (E½) of the southwest quarter (SW¼) of section thirty-two (32), township twenty-nine (29), range one (1) west, in Sedgwick county, Kansas, which land adjoins on the east the land of the plaintiff described in finding No. 1. The defendant, John Heitman, is at the present time, and has been since 1921, a tenant of the defendant Maude Stahlhut on the said land.

"3. There is now and has been for a number of years prior to the events set out in these findings, a hedge fence running north and south along the boundary line between the real property of the plaintiff and defendant, above described, which hedge fence was planted by the father of the plaintiff in the early eighties and has been used and maintained by the Dyer family since this planting.

"4. The general slope of the plaintiff's and defendant's land, described herein, is from the west toward the east. A swale, or depression, appears on the east part of the Dyer land just about as shown by the map, plaintiff's exhibit 1. The low part of this swale drops from an established elevation of ninety-five feet at the west boundary of the Dyer land to ninety-two feet just to the west of the hedge fence on the east of said land.

"5. In the past and up to 1935, the Dyer land has been a productive, level piece of rich farming land, fairly well drained. In times of excessive rainfall water collected northwest of the Dyer land and drained through the swale across the Dyer land to the east, and on to and across the Stahlhut land. In the month of June, 1935, there was excessive rainfall and water flowed down to the east line of the Dyer land, part of which crossed on to the Stahlhut

land and part of which collected over an area of about 6.39 acres west of the hedge. The plaintiff made an opening through the hedge just east of the swale by digging a ditch approximately fourteen to sixteen inches deep in an easterly direction through and on to the Stahlhut land, for a distance of ten or eleven feet. Upon the digging of said ditch the water immediately flowed to the east on to the Stahlhut land. Thereafter and on the same day, the defendant Heitman found the drain thus opened by plaintiff Dyer and filled it up. On the following day the plaintiff Dyer again opened up the drain and the water flowed on to and across the Stahlhut land. A few days thereafter Heitman again filled in said ditch.

"6. In October or November, 1935, the plaintiff Dyer had a section of about sixty feet of said hedge pulled out at a point immediately east of the swale leaving a gap in said hedge. The plaintiff used a fresno and a slip and pulled the loose dirt from where the hedge was pulled, back to the west, leaving a low place or hole where the hedge was pulled, which again opened the drainage through the hedge. Thereafter, in the spring of 1936, the defendant Heitman with the use of horses and fresno filled in the opening and the holes made by the pulling of the hedge as herein described, raising the land to approximately its original level.

"7. At the present time just to the west of the hedge on the Dyer land there is a depression or hole approximately one and a half feet deep running parallel to the hedge, caused by the pulling of about sixty feet of said hedge from north to south; the hole was made to appear more pronounced by the use of a fresno by the defendant John Heitman, as aforesaid.

"8. Dirt and leaves have accumulated around the butts of the hedge trees and have caused a natural raise of the elevation of the property line of about two tenths of a foot. The defendant in preparing the land for planting immediately east of the hedge has plowed it in such manner as to throw the dirt one way, or to the west, which has, to some extent, caused a slight raise in the elevation of the west boundary line of the defendant's property.

"9. The ground on plaintiff's property immediately west of the boundary line where the hedge was pulled is lower than the property of the defendant immediately east thereof, and the same cannot be drained unless a ditch were dug through defendant's property for some distance. If this were done, the water that normally would remain on the plaintiff's property would flow on to and accumulate farther east on defendant's property and remain in a depression similar, but not nearly so pronounced, as the swale or depression on plaintiff's land."

The conclusions of law were:

"1. That the actions of the defendant in filling the ditch dug by the plaintiff and restoring the elevation in the hedge fence did not constitute a private nuisance, and the plaintiff had no right to dig the ditch on to and through the defendant's land, or tear out the hedge and thereby create a ditch on to defendant's land.

"2. .(This conclusion simply denied the injunction and rendered judgment in favor of the defendant.)"

It is well to observe no natural watercourse was here involved. There existed only a slight natural depression or natural course of drainage. The drainage was from plaintiff's land by reason of its slightly higher elevation towards defendant's land. This condition, of course, did not constitute what is properly termed a natural watercourse. (*Wood v. Brown,* 98 Kan. 597, 159 Pac. 396; *Evans v. Diehl,* 102 Kan. 728, 172 Pac. 17; *Tompkins v. Brown,* 134 Kan. 111, 4 Pac. 454.) Surface water under the common law was a common enemy which a proprietor could fight as he deemed best. He could obstruct or divert its flow without regard to resulting damages to the upper owner. (67 C. J., Waters, § 289 [2]; *Martin v. Lown,* 111 Kan. 752, 754, 208 Pac. 565.) As to the treatment of such water on agricultural land we have substituted the civil law for the common law. An owner of lower land is therefore not now permitted to construct a dam or levee which will obstruct the flow of surface water on agricultural land lying outside of an incorporated city, to the damage of an upper owner. (G. S. 1935, 24-105; *Martin v. Lown,* supra; *Skinner v. Wolf,* 126 Kan. 158, 266 Pac. 926; *Gentry v. Weaver,* 130 Kan. 691, 288 Pac. 745.) In the instant case, the trial court was confronted with the question of whether defendant had obstructed the natural drainage of surface water. Between the tracts of land there stood an old hedge. Around the bottom of the trees the elevation of the land was slightly higher than the land on each side of the hedge. Plaintiff had removed not only that elevation, caused by natural processes, but had removed the hedge for some distance and also the roots which left holes into which the water drained from his land. He pulled the loose dirt from where the hedge had stood farther to the west onto his own land, thereby leaving a low place where the hedge had been pulled and to the west thereof. He had cut ditches, not only on his own land but onto defendant's land, which caused the water to immediately flow from his land onto defendant's land. He thus diverted by artificial means the surface water from his own land to the land of the defendant by accelerating the natural volume and force of such drainage. This he was, of course, not permitted to do. In *LeBurn v. Richards,* 210 Cal. 308, 291 Pac. 825, it was held:

"The upper proprietor may not divert by artificial means the surface waters upon his own lands to the lands of the lower proprietor, nor may he accelerate by means of ditches or increase the drainage of his own land to the injury of the lower owner. His right is limited to the disposition of the water through

the chosen channels of nature." (Syl. ¶ 5.) See, also, *Horton v. Sullivan,* 97 Mich. 282, 56 N. W. 552.

The findings disclose defendant filled the holes made by plaintiff and thus raised his own land to approximately its original level.

Plaintiff insists that water now stands on his land, whereas prior to 1935 it did not do so, but drained onto defendant's land. It is perfectly natural since plaintiff lowered the elevation of the east portion of his own land that water should accumulate there and not drain off as readily as previously.

Plaintiff also contends defendant so farmed his land as to raise the embankment. The record discloses that in preparing his land for planting defendant plowed it so as to throw the ground to the west, which caused a slight raise in the elevation of the west boundary line. There is no evidence which would have compelled a finding that such plowing did not constitute good husbandry. The slight raising of the west boundary line resulting from ordinary plowing cannot well be classed as erecting a dam or levee against the flow of surface water. For an instructive treatise on the subject of prudent husbandry as related to obstruction of surface waters, see the early case of *Martin v. Jett,* 32 Am. Dec. 120, and note; *Horton v. Sullivan,* supra; *Gregory v. Bush,* 64 Mich. 37, 31 N. W. 90.

Plaintiff urges if he actually lowered the level of his land west of the hedge, the court had authority to order him to reëstablish the original level. There is no appeal from a refusal of the court to enter such a judgment against him. We, however, know of nothing to prevent plaintiff from replacing the former contour of his land without a court order.

Plaintiff suggests the trial court should have sustained his motion for additional findings, at least to the extent of making fuller findings. A review of the evidence discloses that while a few additional facts might have been included in the findings, the material facts were included and the findings made justify the conclusion reached.

We have noted the decisions cited by plaintiff, but they in no wise conflict with the views herein expressed.

The judgment is affirmed.