No. 35,215

Sam Bolinger, *Appellee,* v. D. Moorhouse, *Appellant.*

(114 P. 2d 853)

Opinion filed July 5, 1941.

*S. S. Alexander* and *Woodrow B. Morris,* both of Kingman, for the appellant.

*C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Allen, J.: The action was for a mandatory injunction to compel defendant to fill a ditch and to remove an embankment which it was alleged diverted surface waters. The appeal is from the order and decree granting the injunction.

The court made findings of fact and returned conclusions of law. The findings, with certain changes, made on final hearing, are as follows:

"1. The plaintiff and defendant are owners of adjoining farms located a few miles southwest of Cheney, Kan. The defendant's farm is located in Sedgwick county and the plaintiff's farm is located in both Kingman and Sedgwick counties. The south forty acres of the defendant's land is bounded on the west and on the south by the plaintiff's land. The county line runs down the common north-south boundary line.

"2. A township road runs north and south along the west side of the defendant's farm until it reaches a point a few feet north of the north line of the defendant's forty-acre tract, at which point the road turns west. The road does not continue south so as to separate the adjoining lands of the plaintiff and the defendant.

"3. The township road is graded and ditches run along both the east and west sides of the road. The ditches are maintained by the township. The east ditch stops at a point approximately ten to fifteen feet north of the north line of the forty-acre tract owned by the defendant.

"4. Prior to the month of November, 1939, the defendant maintained a ditch which connected with the township ditch running along the east side of the township road. The ditch extended south along the west line of the defendant's forty-acre tract and was entirely on the defendant's land. No embankment was maintained along this ditch prior to November, 1939. The ditch was approximately four feet wide and one and a half feet deep.

"5. The ditch above described was maintained by the defendant with the consent of the plaintiff. (The words 'consent of' were changed to 'without the objection' on final hearing.)

"6. The elevation of the land in question is such that normally the water would overflow out of the east township ditch for a distance commencing at a point approximately 100 feet north of the south end of the township ditch and extending to the south end of the ditch. The water would then flow in a southeasterly direction across the land of defendant. The lowest point along the ditch is approximately 93 feet north of the north line of the defendant's forty-acre tract and the water coming down the ditch would normally first flow out of the ditch at this point. As the volume of water coming down the ditch increased, more of the water would flow to the south, and if enough water flowed down the ditch some of it would flow south along the ditch maintained by the defendant.

"7. There is a natural watercourse flowing in a southeasterly direction which crosses the north-south township road at a point approximately 93 feet north of the north line of the defendant's forty-acre tract and this natural watercourse continues towards the southeastward.

"8. The water which flowed into the natural watercourse eventually flowed onto the plaintiff's land, but at a point where no damage was done to plaintiff's land.

"9. Prior to November of 1939 the water flowed into this natural watercourse across the defendant's land and on the plaintiff's land, as found in findings of fact 6, 7, and 8.

"10. Sometime during the month of November, 1939, the defendant caused the ditch maintained by him to be deepened and enlarged. The ditch was made approximately twice as wide and twice as deep. The dirt taken from the ditch was thrown to the east side of the ditch, causing the elevation on the east side of the ditch to be higher than on the west side of the ditch.

"11. At approximately the same time the defendant also caused a small embankment to be erected along the east side of the ditch maintained by the township for a distance of approximately 100 feet north of the north line of the defendant's forty-acre tract. This embankment varied in height from six to eighteen inches.

"12. The defendant is maintaining at this time on his land the embankment referred to in finding No. 10. (Changed to 11 on final hearing.)

"13. The defendant is maintaining on his land at this time the ditch and embankment referred to in finding No. 9. (Changed to 10 on final hearing.)

"14. The ditch now maintained by the defendant is approximately twice as wide and twice as deep as the south 100 feet of the ditch maintained by the township.

"15. All the water now flowing down the east ditch of the township road after a normal rain flows south along the ditch maintained by the defendant to a point where it flows onto the plaintiff's land. At the point where the water now flows onto the plaintiff's land there is no natural drainage and the water remains on plaintiff's land until it escapes by evaporation and saturation, whereas, prior to November of 1939 the water followed the course outlined in finding No. 9.

"16. The effect of the water standing on plaintiff's field is to drown young crops and delay tillage of the land by forcing the plaintiff to wait until the water evaporates and saturates. A much greater volume of water now flows along the ditch maintained by the defendant than flowed along it prior to the building of the embankment and the enlargement of the ditch.

"17. The ditch mentioned in finding No. 4 was constructed more than fifteen years prior to the institution of this lawsuit and has been cleaned out three or more times by the defendant, Moorhouse."

The court made the following conclusions of law:

"1. The defendant is not entitled to maintain the embankment which causes the water to be artificially diverted onto the plaintiff's land and the plaintiff is entitled to a mandatory injunction to compel the defendant to remove the dike along the east side of the roadway and ditch for a distance of 95 feet north of the north line of the defendant's forty-acre tract."

Our statute G. S. 1935, 24-105, provides:

"A landowner or proprietor shall not construct or maintain a dam or levee for the purpose of obstructing or collecting and discharging with increased force and volume the flow of surface water to the damage of the adjacent owner or proprietor; but nothing herein shall be construed as preventing an owner of land from constructing a dike or levee along the bank of a natural watercourse to repel flood waters from such natural watercourse."

In our recent case Dyer v. Stahlhut, 147 Kan. 767, 78 P. 2d 900, it was held:

"A lower landowner may not construct or maintain a dam or levee to obstruct the flow of surface water on agricultural land outside the limits of an incorporated city, to the damage of an upper landowner.

"An upper proprietor may not divert by artificial means the surface water upon his own lands to the lands of the lower proprietor, nor may he accelerate by means of ditches or increase the drainage of his land to the injury of the lower owner." (Syl. ¶¶ 1, 2.)

The defendant contends that the findings were not supported by the evidence.

In finding No. 10 the court found that in November, 1939, the defendant enlarged the ditch maintained by him and caused the dirt

taken from the ditch to be thrown to the east side of the ditch, causing the elevation on the east side of the ditch to be higher than on the west side of the ditch.

In finding No. 11 the court found that defendant caused a small embankment to be erected on the east side of the ditch maintained by the township for a distance of approximately 100 feet north of the north line of defendant's forty-acre tract and that this embankment varies in height from six to eighteen inches.

Defendant asks a reversal on the ground there was no evidence to support these findings.

The surveyor of Sedgwick county made a survey of the premises at the request of plaintiff and prepared a contour map. The surveyor testified:

"I am county surveyor for Sedgwick county. I made a survey at the request of the plaintiff. Exhibit 2 is a contour map which I prepared from my field notes. The heavy line on the map extending north from the common corner marked 'Y' represents an embankment on the east side of the east ditch on the north-south roadway. The embankment is adjacent to the west edge of the fence.

"The natural course of the water running down the east ditch of the road is down the ditch to a point approximately 95 feet north of the fence corner, thence easterly, thence northeasterly and thence southeasterly across the field. The witness traces on exhibit 2 with a red pencil the route which he has described. At the time I made the survey the direction which the water would flow was due south.

"At the time I made the survey there was an embankment running along the east side of the Moorhouse ditch. This embankment joined with the embankment running north from the point marked 'Y' on the map so as to make one continuous embankment or dike along the east side of the public ditch and also the ditch constructed by the defendant. The flow of the water is diverted from the natural water course to this artificial water course by a dike constructed along the east side of the road from the point 'Y' north approximately 100 feet. If that dike were not in there for that distance of approximately 100 feet north from point 'Y,' the water would then flow along the natural water course except in floods. In flood time the water very probably would spread clear across the corner in a southeasterly direction. In order to return the water to its natural course it would be necessary to remove this dike for approximately 100 feet.

"I was out there three times. The last time I was out there I looked to see whether a cut had been made in the dike. There had been no cut made in the dike. That occasion was along in the summer sometime.

"At the normal outlet of the water the dike is 1.1 foot above the natural ground level. That difference is enough to keep the water from flowing down the natural water course. That point is approximately 95 feet north of the fence.

"The embankment was easily seen with the eye without the use of instruments. I am referring to the embankment that extended north from point 'Y' as I have shown it on the plat."

Clara Bolinger, wife of the plaintiff, testified that in the month of November, 1939, an embankment was built on the east side of the north-and-south road and extended about 100 feet north from the common corner. A part of her testimony follows:

"Q. Do you know who built that embankment? A. I didn't know him personally, no.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Will you just go ahead and tell the court just what you saw going on out there and what you went out and did? A. I was all alone. It was Monday morning and Mr. Moorhouse was standing out there giving this man orders what to do and I went out and talked to Mr. Moorhouse.

"Q. And what did you say to Mr. Moorhouse and what did Mr. Moorhouse say to you? A. Oh, I just asked him what he was making the ditch for.

"Q. Then what did he say to you? A. He said to keep the water out of his yard.

"Q. Then was there any further conversation relative to whether that might flow down that ditch? A. I asked him 'Who's going to take care of the water after it gets out of the ditch?'

"Q. And what was his reply to that? A. He said it wasn't any of his business.

"Q. Now as I understand it they were using one of these big grading machines in that work? A. Yes, sir.

"Q. And there was some man who you say you didn't know, was operating this machine? A. Yes.

"Q. And Mr. Moorhouse was there? A. Yes, sir.

"Q. Directing the operation of the machine? A. Yes.

"Q. While he was directing it—

"The Court (interrupting): You say 'directing it.' That's a conclusion. What did she hear him say?

"Q. Did you hear him giving any directions to the driver of this machine? A. He was just motioning with his hands.

"Q. What do you mean by motioning with his hands? A. Well, whether to fill up more or to go on.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. While he was so making those motions with his hands and so forth, did you see this machine make any part of this embankment extending north from the fence? A. Yes, I did.

"Q. Just tell the court how that embankment was made there. A. Well, it was by this big plow or this road machinery, whatever it was; or grader or whatever they use to grade roads with.

"Q. Can you tell the court just how that machine put that dirt up along the embankment? A. Well, not exactly. He backed up and would turn his knife on the machinery and then he would shove the dirt up.

"Q. Then he would shove the dirt up against this fence along this embankment? A. Yes.

. . . . . . . . . . . . . . . .

"The Court: Q. Where were you standing when you were talking to Mr. Moorhouse? A. Right out where he was.

"Q. Well, were you south of this corner? Do you understand the map? A. Yes, this is our house right here and right here is where he was standing on a post and I just walked right out across our yard and stood out there in the road.

"Q. Where was the grader working then? A. It was working right there, backwards and forth, throwing up that dirt and making that ditch.

"The Court: That's all.

"Attorney for appellee (continuing redirect examination): Q. Right at that corner post? A. Yes, sir.

"Q. Well, now were you out there at any time when the grader was backing up and throwing dirt against this embankment along in here? A. Yes.

. . . . . . . . . . . . . . . .

"Q. At that time when he was doing that was or was not Mr. Moorhouse waving his hands to the driver of this machine? A. He was.

"Q. He was? A. Yes, sir."

In *Randall v. Bird,* 118 Kan. 341, 235 Pac. 103, it was stated:

"The rule again followed that findings of fact, when sustained by evidence, are conclusive on appeal, although there was evidence on which a contrary finding could have been made." (Syl.)

Although there was conflict in the evidence, we have no difficulty in concluding that the findings of the trial court are supported by substantial testimony.

Defendant contends the court is without authority to compel defendant to remove an embankment in the roadway if made at the direction of the township road authorities. We find no evidence in the record that the dike or embankment was made at the direction of the township authorities.

The fact that a portion of the embankment was west of defendant's fence is immaterial. Defendant was the owner of the land to the center of the highway, subject to the easement of the public therein. (*Comm'rs of Shawnee Co. v. Beckwith,* 10 Kan. 603; *Jefferson County Comm'rs v. Stonehouse Drainage District,* 127 Kan. 833, 837, 275 Pac. 191.) This is not an action to abate a public nuisance, but to remove an embankment on the land of defendant which diverted the flow of surface waters.

It is urged that the defendant cannot be compelled to remove the embankment because it was created by the normal plowing and by

the natural accumulation of dirt in the weeds and grass under the fence rows. The answer is that the court found that the embankment was constructed by a road grader operated under the direction of the defendant, and there was substantial evidence to support the finding of the court. And the same answer must be given to the contention that the court erred in denying the application of the defendant to make the adjacent townships in Sedgwick and Kingman counties parties to the action. Under the findings the dike was erected by the defendant. Furthermore, no attempt is made to show in what manner, if any, defendant was prejudiced by the fact the townships were not joined.

In defendant's brief it is stated:

"It is a well-settled rule of equity that one is not entitled to the equitable remedy of injunction to protect him from consequences which he has invited, encouraged and contributed to by his own conduct."

Many Kansas cases are cited. The equitable principle is sound and has often been applied by this court, but under the findings of the trial court there is no basis for its application in this case. No issue of estoppel was raised by the pleadings.

Defendant argues that the court should not have interfered with defendant's use of his drainage ditch. The court made no order whatever in regard to defendant's ditch. The only order made by the court was that the defendant remove the embankment which he had constructed along the township ditch. Defendant's drainage ditch is not mentioned in the decree.

We find no reversible error in the record and do not think it necessary to extend the opinion by a discussion of other points urged.

The judgment is affirmed.