No. 30,084.

O. M. Tompkins, *Appellee,* v. Nannie K. Brown, W. P. Brown and Virgil Wells, *Appellants.*

(4 P. 2d 454.)

Opinion filed November 7, 1931.

*Charles Bucher* and *Barney Bucher,* both of Coffeyville, for the appellants.
*A. R. Lamb* and *Clement A. Reed,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an appeal from an order of the trial court enjoining and restraining lower landowners from erecting and maintaining a dam obstructing the flow of water over their land so as to cause the water to back up over and on the premises of the plaintiff, an upper landowner. The action was not only for an injunction but also for damages claimed to have been already sustained by the plaintiff by reason of the water being backed up on his premises, but the injunction feature is all that has thus far been tried.

The petition is apparently drawn by the plaintiff so as to cover two theories: first, that the defendants have no right under the common law to dam up a natural watercourse, thereby backing up the water upon an upper landowner to his injury; and second, that the defendants, being the owners and in possession of the land that is used exclusively for agricultural purposes, lying wholly outside the limits of any incorporated city, are prohibited from constructing or maintaining a dam for the purpose of obstructing the flow of surface water on their land to the damage of the upper landowner or proprietor, because of the provisions of R. S. 24-105, which are as follows:

"A lower owner or proprietor shall not construct or maintain a dam or levee for the purpose of obstructing the flow of surface water onto his land to the damage of the adjacent upper owner or proprietor; but nothing herein shall be construed as preventing an owner of land from constructing a dike or levee along the bank of a natural watercourse to repel flood water from such natural watercourse: *Provided,* That the provisions of this act shall apply only to lands used for agricultural purposes and highways lying wholly outside the limits of any incorporated city."

The defendants insist that the obstruction complained of is that of the drainage of surface water only and not an obstruction of any waterway or natural watercourse as defined by the textbooks and by the decisions of this court, and further, that the restrictions in the last provision of R. S. 24-105 make that section inapplicable to the facts in this case.

The trial court did not make special findings of fact, but a general finding in favor of the plaintiff and against the defendants so that the findings and determination may have been under either or both of the theories urged by the plaintiff, as above stated.

The evidence shows that the property of the plaintiff consists of three residence lots in the city of Coffeyville, with a residence thereon. Under it there is a cellar and near the house is a garage. The house is used and occupied by the plaintiff as his residence. Directly east of his lots is Walnut street, which is the east boundary line of the city, and directly east of Walnut street is the farm of the defendants which was regularly farmed until two years ago, when the portion near the street was used for pasture and the land farther east has been regularly farmed. The land west of this farm slopes from three directions to a low point on the east side of Walnut street nearly opposite the plaintiff's lots, draining the surface

water not only off the plaintiff's lots in that direction, but from a distance of about five blocks from the north, about two blocks from the west, and two blocks from the south. What is now Walnut street was constructed as a dirt road nearly twenty years ago with a ditch on each side of it and a culvert underneath it emptying on the east side of the road at or near this low place. Before the construction of the dirt road this drainage water regularly went onto the defendants' farm, crossing it in a southeasterly direction to the Verdigris river. At times of heavy rains a large quantity of water would drain to that low point on the east side of Walnut street and cross over into defendants' field. The plaintiff describes the channel or course from this point on the east side of the road, where the water passed under the fence and over the defendants' farm, as follows:

"In my judgment this ditch and channel was, maybe, ten or twelve feet wide where it went through on Brown's place on the east side. There was a well-formed waterway there, like a drain across a field would make, and where it went under the fence, I suppose it was two feet lower than the fence, about a foot, or two feet lower than the fence. The bed of this channel was quite a bit lower than the other territory in that vicinity. I would judge where it went through the fence there it was something like a foot and a half deep."

No other witness attempts to describe the channel, but some of them refer to it as a low place and other witnesses speak of it as a "natural watercourse," a "natural course" without describing it. Some said the water spread out and overflowed Mr. Brown's field. Only by inference is the description of the plaintiff contradicted where he said the drainage way consisted of a channel ten or twelve feet wide and one and one-half feet deep. One witness said when the dirt road was constructed, nearly twenty years ago, dirt was thrown out of the ditch on the east side, making a bank about two feet high where the fence stood, but a number of witnesses described that as being done for the first time when the hard-surfaced road was constructed about ten years ago. Most witnesses described this levee as being of very little effect as heavy rains washed holes in it so that the water went over on the defendants' land just the same. It seems to have been frequently repaired by the defendants and sometimes by the road overseer, and on a few occasions the plaintiff and others in his behalf, when water was backed up on his premises, facilitated with a spade the breaking of the levee.

The dam which the defendants were constructing when this action was commenced in August, 1930, is back of this levee at the

fence and wholly on the defendants' land for the purpose, as claimed by defendants, of supporting the levee at the fence.

When a pavement was constructed on this street in 1926, or earlier when the street was hard-surfaced, an attempt was made by the engineer to construct the ditch on the east side of the street so as to enable it to carry this drainage water to the south and over the hill two blocks away, but it seems not to have worked for some reason.

Appellants contend that the description given of the entrance of the drainage water on the defendants' land will not constitute a natural watercourse under the definitions given and approved by this court, and cite three Kansas decisions giving definitions of a natural watercourse, as follows:

"Again, for a watercourse there must be a channel, a bed to the stream, and not merely low land, or a depression in the prairie over which water flows. It matters not what the width or depth may be, a watercourse implies a distinct channel, a way cut and kept open by running water, a passage whose appearance, different from that of the adjacent land, discloses to every eye, on a mere casual glance, the bed of a constant or frequent stream." (*Gibbs v. Williams*, 25 Kan. 214, 220.)

"A watercourse consists of a channel, with banks, and bed, and running water. .There must be a source of supply, a defined channel, and permanence of flow." (*Rait v. Furrow*, 74 Kan. 101, 105, 85 Pac. 934.)

In the syllabus of the case of *Wood v. Brown*, 98 Kan. 597, 159 Pac. 396, the court in referring to a certain statute says it "uses the term watercourse according to its previously accepted meaning, which excluded depressions lacking the characteristic of a distinct channel cut in the soil by running water and having a bed and banks discernible by casual glance."

The appellants only insist upon one feature of the requirements of these definitions being absent in the present case, namely, the specific and well-defined channel with bed and banks discernible by a casual glance, the other features of permanency of flow, source of supply and supply being limited to drainage of surface water having all been eliminated by these and other definitions. Eliminating from the evidence the descriptions which amount to conclusions of law in this inquiry as to the place of the drainage on the defendants' farm being a "natural watercourse" and a "natural course," we still have the specific and definite description of the place by the plaintiff where he said the "ditch or channel was maybe ten or twelve feet wide where it went through on Brown's place on

the east side. There was a well-formed waterway there like a drain across a field would make, and where it went under the fence I suppose it was two feet lower than the fence, about a foot or two feet lower than the fence. The bed of this channel was quite a bit lower than the other territory in that vicinity." This definite description was not specifically denied by any witness. The inferential denials were by giving different descriptions of the place and the surroundings. If the court credited the testimony of the plaintiff with reference to the description given by him, which it evidently did in making its general finding in favor of the plaintiff, the evidence of the plaintiff would be abundantly sufficient to support its finding, and was sufficiently definite and specific to meet the requirements of a natural watercourse under our definitions, some additional ones along the same line being as follows:

"A stream may be a natural watercourse although its outlet be over the unchanneled surface of lowland, and not into another watercourse." (*Rait v. Furrow,* 74 Kan. 101, syl. ¶ 4, 85 Pac. 934.)

"Where surface water, having no definite source, is supplied from falling rains and the melting snow from a hilly region or high bluffs, and owing to the natural formation of the surface of the ground is forced to seek an outlet through a gorge or ravine, and by its flow assumes a definite or natural channel, and escapes through such channel regularly during the spring months of every year, and in seasons of heavy rains, and such has always been the case so far as the memory of man runs, *held,* that such accustomed channel through which the waters flow may fairly be said to possess the attributes of a natural watercourse." (*Palmer v. Waddell,* 22 Kan. 352, syl. ¶ 1.)

"For a watercourse there must be a channel, a bed to the stream, and not merely low land or a slough over which water flows." (*C. K. & W. Rld. Co. v. Morrow,* 42 Kan. 339, syl., 22 Pac. 413.)

"It is sufficiently permanent if the accumulated surface water flows through a well-defined channel, made by the water flowing with some regularity during the heavy rains which ordinarily occur in that region." (*Brown v. Schneider,* 81 Kan. 486, 488, 106 Pac. 41. See, also, in same general connection, *Chicago, Rock Island & Pacific Railway Co. v. O. A. Scott,* 71 Kan. 874, 81 Pac. 1131; *Lynch v. Payne, Agent,* 117 Kan. 5, 230 Pac. 85; *Skinner v. Wolf,* 126 Kan. 158, 266 Pac. 926; and *Gentry v. Weaver,* 130 Kan. 691, 288 Pac. 745.)

Much of the evidence in this case tended to show the filling up of the passage or waterway in question with dirt from the ditch on the east side of the road, later Walnut street, by making a levee along the road fence, and later by driving iron pipe into the ground along the fence line and placing rock in the levee; also the enlarging and deepening of the ditch on the east side of the road or street for

the purpose of carrying the drainage water over the hill two blocks to the south. But none of these efforts constitute a change of the original and natural watercourse until an absolute and permanent change is effected.

Our definitions of a natural watercourse having been made to cover such where the source of supply was only a drainage of surface water, before the enactment of R. S. 24-105, particularly applicable to obstructing the flow of surface water, and having reached the conclusion that there was sufficient evidence to support the general finding of the trial court on the theory that the waterway on and over the defendants' farm was a natural watercourse, there is no purpose in our considering the second proposition of the plaintiff as to his rights under R. S. 24-105.

We think under the evidence in the case the order of injunction was properly granted.

The judgment is affirmed.